C. B. MANROSS, *Appellee*, v. THE UNCLE SAM OIL
COMPANY, *Appellant*.

No. 17,777.

SYLLABUS BY THE COURT.

1. OIL COMPANY—*General Manager—Authority to Employ Su-
perintendent.* The general manager of an oil company has
implied authority to bind the company by a contract for the
employment of a superintendent of refineries for one year and
to fix the compensation of such employee.

2. —————— *Same.* The effect of the presumption of law respect-
ing the power of the general manager to enter into such con-
tract on behalf of the corporation is to cast upon the corpora-
tion the burden of proving the contrary, that is, his lack of
authority in the premises and that the person seeking to bind
the corporation had knowledge of the restrictions.

3. CORPORATION—*Charter—By-laws—Implied Powers of General
Manager.* Certain provisions of the charter and by-laws of a
corporation considered, and held not to constitute a limitation
upon the implied powers of a general manager held out as
possessing the usual and ordinary powers which the general
manager of such a corporation would be expected to exercise.

4. EVIDENCE — *Rejection — Not Prejudicial Error.* For the
reasons suggested in the preceding paragraph it is held that
the refusal to admit in evidence the charter and by-laws of
the corporation, while error, is not sufficient ground for re-
versal.

5. EMPLOYEE DISCHARGED—*Instructions.* The appellee, claiming
that he was employed by the general manager of appellant as
superintendent of refineries for one year, sued for salary
claimed to be due for one month. The appellant set up as a
defense that it had discharged appellee for incompetency, dis-
loyalty to the company and insubordination in refusing to
obey the orders of the general manager. *Held,* that the court
should have instructed the jury that the general manager had
the power to discharge appellee for such grounds, and that if
they believed from the evidence that such grounds were true
and were the cause of his discharge he would only be entitled
to recover what was due him up to the time of such discharge.

Appeal from Wyandotte court of common pleas.
Opinion filed December 7, 1912. Reversed.

*Albert L. Wilson*, of Kansas City, Mo., for the appellant.

*James F. Getty*, of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant is engaged in producing and refining oil and owns and operates a number of refineries located in Kansas and Oklahoma. The appellee, claiming that he had performed services for appellant as superintendent of refineries, brought this action to recover his salary for one month. The jury returned a verdict in his favor for $175 and interest. From the judgment the company appeals.

The plaintiff alleged that he had been employed as superintendent of refineries for a period of one year from August 1, 1910, at a salary of $175 per month, under a written contract executed on behalf of the company by S. A. Darrough, its general manager; that in pursuance of the terms of the contract he had performed his duties as such superintendent and that his salary for the month ending October 21, 1910, remained due and unpaid. Attached to the petition was a copy of the contract. The answer, which was verified, admitted that Darrough was general manager of the company but denied his authority to create the office of superintendent of refineries or to fix the salary of such office or to make the contract. It set out what purported to be a copy of the by-laws of the company and certain provisions of its charter, which placed the management, control and direction of the affairs of the company, except as otherwise expressly provided, in a board of directors consisting of twenty-one members. It was alleged that no authority had been delegated by the board to the general manager to enter into the contract set up in the petition. As a further defense it was alleged that when the written contract was executed appellee well knew that S. A.

Darrough had no power or authority under the charter and by-laws to make the contract, and that he was about to be compelled to resign the position of general manager, but that, intending to defraud the company, Darrough and appellee entered into the contract long after it purported to be executed and fraudulently dated it back to the 1st day of August, 1910. The answer further alleged that at the time the alleged contract was executed the appellee was and for some time prior thereto had been in the employ of the company at a much smaller salary; that in September, 1910, S. A. Darrough resigned and was succeeded as general manager by H. H. Tucker, jr.; and that October 14, 1910, Tucker, as general manager, directed the appellee to perform certain services for the company at Tulsa, Okla.; that the appellee refused to obey such directions or to be controlled in the performance of his duties by the general manager, and was guilty of insubordination; that he informed the general manager that he had a contract whereby he became general superintendent of refineries, and he exhibited to the general manager a copy of the contract sued upon, which was the first information the company had of the existence of the pretended contract; that Tucker as general manager at once denied the authority of the former general manager to make the contract and notified appellee that the company refused to be bound thereby; and having discovered that the appellee was wholly unfit for the position of general superintendent of refineries and that he was not loyal to the company and was not using his best efforts in the interest of the company, he thereupon discharged appellee as an employee on account of his insubordination, incompetency and disloyalty. The answer alleged that appellee had never rendered any services to the company since that date, and tendered the sum of $70 which it admitted was due as

salary to and including October 14, but at the rate of salary which it claimed the appellee was entitled to under his employment prior to the execution of the pretended contract. The answer, which is quite voluminous, sets up a number of other matters, which the court properly took out of the case. Whether or not the court by its rulings on the admission of evidence and by its instructions deprived the appellant of one of its defenses will be considered later. The reply was a general denial.

The claims of error are numerous, but most of them revolve about the question of the implied authority of the general manager of a corporation such as this was to enter into a contract for the employment of a general superintendent of refineries for one year and to fix his salary. We think the making of the contract in question was within the apparent scope of the authority of the general manager. It has been frequently held that the term "General Manager" or "General Superintendent" is a broad and comprehensive title, and that as to the public and those who deal with such an officer, without actual knowledge of his authority, he is the corporation itself. (*A. & P. Rld. Co. v. Reisner,* 18 Kan. 458, 460, "General Manager;" *Pacific Rld. Co. v. Thomas,* 19 Kan. 256, "General Superintendent;" *A. & N. Rld. Co. v. Reecher,* 24 Kan. 228, "General Manager;" *Kansas City v. Cullinan,* 65 Kan. 68, 68 Pac. 1099, "General Manager".)

In *St. L., Ft. S. & W. Rld. Co. v. Grove,* 39 Kan. 731, 18 Pac. 958, it was said:

"As the general manager of a railroad company has full control of all the company's affairs, and complete direction over its treasury, we must assume that Miller had authority to employ Grove, or direct Forbes to employ him." (p. 735.)

In *Insurance Co. v. Gray,* 43 Kan. 497, 23 Pac. 637, it was said:

"A general agent of an insurance company can mod-

ify the insurance contract or waive a condition of a written policy by parol.

"A provision in an insurance policy respecting encumbrances on the property insured may be waived by the insurance company or its general agent; and this although the policy contains a printed stipulation that no agent of the company or any person other than the president or secretary shall have authority to waive any of the terms or conditions of the policy, and all agreements by the president or secretary must be signed by either of them." (Syl. ¶¶ 2, 3.)

"A general manager of a corporation has been defined to be a person who really has the most general control over the affairs of the corporation, and who has knowledge of all its business and property, and can act in emergencies on his own responsibility; who may be considered the principal officer." (14 A. & E. Encycl. of L. 1002.)

(See, also, 4 Words and Phrases, p. 3073, under title "General Manager" and cases cited.)

In a recent case, *Hornick v. U. P. Railroad Co.*, 85 Kan. 568, 118 Pac. 60, 38 L. R. A., n. s., 826, it was held that the general claim agent of a railroad company has not the implied authority in the settlement of a claim against the company to bind the company by a contract to give the claimant employment for life. There is, of course, a wide distinction between the powers of the general claim agent and those of the general manager, and in the opinion it was well said:

"It is not one of the duties of a claim agent to employ men to operate the road. If the general manager, or other official to whom power of employment is intrusted, should make such a contract there would be some room to imply authority of this exceptional character, but the employing and discharging of officers, agents and employees of the company is not the purpose for which a claim agent is appointed, nor is it a duty which naturally belongs to such an agency." (p. 575.)

16—88 KAN.

The weight of authority seems to hold that as a rule the general manager of a corporation may make a contract of employment for one year which is binding on the corporation, upon the theory that a contract for such a time is not unusual or extraordinary. It has been frequently held as the general rule that express authority must be shown to engage employees for a longer period. In *Laird v. Michigan Lubricator Co.,* 153 Mich. 52, 116 N. W. 534, 17 L. R. A. 177, the employment was for three years, and it was held that in the absence of any evidence of custom or any holding out as possessed of authority other than the bare fact that he was secretary-treasurer and manager, no authority would be implied to contract for employment not only beyond his own term of office, but beyond the period during which the entire management of the affairs of the company might be changed by the election of a new board of directors. (See, also, *Carney v. N. Y. Life Ins. Co.,* 162 N. Y. 453, 57 N. E. 78, and note to same case in 49 L. R. A. 471.) In *Stahlberger v. New Hartford Leather Co.,* 92 Hun, 245, 36 N. Y. Supp. 708, it was held that a general manager may contract for the employment of a laborer for one year when he has been held out as general agent with power to employ and discharge men and the person employed has no knowledge of any restrictions upon his power. (To the same general effect see, also, *Townsend v. Railway Co.,* post, p. 260; *Peck v. Dexter S. P. & P. Co.,* 164 N. Y. 127, 58 N. E. 6; *Moyer v. Terminal Company,* 41 S. C. 300, 19 S. E. 651, 25 L. R. A. 48.)

In the case last cited it was held that notice of a by-law providing that no officer except the board of directors shall have authority to make contracts for service for the period of a year is not chargeable to one who is employed for a year by the general manager, who has been given absolute charge of its business at the place where the contract was made.

Since the general manager had implied authority to bind the company by the contract most of appellant's claims of error are easily disposed of. The petition was not subject to demurrer. The copy of the contract attached thereto purported to be executed by S. A. Darrough as general manager, and it was not necessary to allege that he was such officer. There was no abuse of discretion, nor was it error to refuse to permit appellant to cross-examine the appellee in reference to the circumstances under which the contract was executed before admitting in evidence the original. He was called merely to identify the signature of Darrough and to prove that the latter was general manager of the company. There was no apparent reason why the orderly procedure should be set aside and appellant be permitted to establish its defense by a cross-examination upon matters wholly foreign to those brought out in the direct examination.

Nor was proof required showing that authority had been delegated to the general manager by the board or executive committee before the contract was admissible, for the reason that *prima facie* the general manager was authorized to bind the company by such a contract. We construe the allegations of the petition to set up a cause of action for earnings or salary due upon a contract, and not an action for damages for the breach of the contract by unlawfully discharging the appellee; and therefore the court properly limited the inquiry as to appellee's earnings elsewhere to the month involved.

It is next contended that it was error to refuse to permit appellant to cross-examine appellee touching his knowledge of the provisions of the charter and by-laws of the company which it is insisted limited the authority of the general manager. This claim may be considered in connection with the claim that it was error to refuse to admit in evidence on the part of the

defense one of the record books of the company containing a copy of its charter and by-laws. The court held the latter inadmissible on the ground that it was incompetent and immaterial what the charter and by-laws provided respecting the authority of the general manager. The court apparently proceeded on the erroneous theory that the fact that a contract of this character was made by the general manager was conclusively binding upon the company. Such is not the law. *Prima facie* the general manager had such power, but as a matter of fact he may not have possessed any such authority, and the person seeking to bind the corporation by the contract may have known of the limitations upon his implied powers, in which event the corporation would not be bound by the contract. The effect of the presumption of law respecting the power of the general manager was to cast upon the corporation the burden of proving the contrary, that is, his lack of authority, and that the party seeking to bind the corporation had knowledge of the restrictions. It was entirely proper for the corporation to show by its charter and by-laws, if it could, that the power of the general manager in matters of this kind was expressly or otherwise restricted; and we are unable to discover any valid reason for refusing to admit the books of the company which purported to contain a copy of the charter and by-laws. The book was produced by the officer who testified he had charge of the records of the company, and it was not necessary to produce the original charter. However, the objection was sustained solely upon the ground that the evidence was irrelevant and immaterial. It was proper also on cross-examination of appellee as a witness to ask if he had actual knowledge that only the board of directors or its executive committee had authority to make such a contract. We are unable to find that either ruling amounted to reversible error for the reason that no

claim is made that appellee had actual knowledge of
any restrictions upon the powers of the general man-
ager except as appear from the charter and by-laws of
the company, and for the further reason that the par-
ticular provisions of the charter and by-laws upon
which appellant relies to establish the lack of power
in the general manager to bind the company by such
a contract do not bear out the contention. The verified
answer set out a provision of the charter which in
general terms declared that "the affairs of this cor-
poration shall be managed and conducted by a Board
of Directors," following which is a declaration that
the board shall be composed of twenty-one members.
This provision is common to all charters and in no
manner restricts or limits the implied power of the
general manager to bind the corporation by any con-
tract entered into by him for the company in the usual
scope of his authority. So much for the charter. The
answer sets out a number of by-laws, among them
section 20, which reads:

"The general manager shall have the control and
management of the property and business of the Com-
pany, under the direction of the Board of Directors."

Section 21, in part, reads:

"The management, control and direction of the af-
fairs of the corporation is vested in the Board of Di-
rectors, . . . except as especially otherwise pro-
vided by law or by these by-laws. . . . The Board
of Directors shall fix and determine the compensation
to be paid to each of the officers and the amount and
condition of any bond any such officer shall furnish."

It is quite obvious that none of these provisions re-
stricts or limits the implied power of the general man-
ager in matters within the apparent scope of his du-
ties. The officers whose compensation is to be fixed
by the board are clearly those officers named and cre-
ated by the by-laws themselves, including the general
officers of the corporation, the president, the six vice

presidents, the secretary, the treasurer, and the general manager. In fact, it seems obvious that if the appellee, at the time he entered into the contract in question, had held in his hand a copy of the charter and by-laws, and had examined them with a view of ascertaining what the power and authority of the general manager was in respect to a contract of employment to superintend the company's refineries for one year, he would have found nothing to cause him to question the manager's authority in the premises. Had the contract been for more than one year, or had it contained provisions obviously against the interests of the company, a different question might arise; but the character and nature of the employment, and the length of time, were only such as a general manager, held out as possessing the usual and ordinary powers, would be expected to exercise on behalf of the company.

The court limited the issues to whether or not the contract was entered into in good faith between appellee and the general manager clothed with authority to bind the company, and whether or not, in pursuance thereof, the appellee performed the services and was wrongfully and unlawfully discharged, and to an inquiry as to what sum, if any, was due him as salary, and submitted to the jury the question of whether or not there was any fraud or collusion on the part of S. A. Darrough and the appellee, or either of them, with the knowledge or connivance of the other. A number of instructions were asked by appellant, which were refused. Most all of them were based upon the theory that the general manager, under the provisions of the charter and by-laws of the company, had no authority to make the contract, and it is not necessary to consider the alleged error in refusing to give them. It would seem, however, that the court should have instructed that, even if the jury found from the evi-

dence that the contract was made as the appellee claimed, and that the general manager was clothed with authority to employ the appellee for a year and to fix his salary, still the company, through its general manager, had the right to discharge him at any time for insubordination or disloyalty to the company or the refusal to use his best efforts in the company's interests. An instruction embodying this statement of the law was requested and refused. The instruction was objectionable for the reason that it covered a lot of extraneous matters, was filled with repetitions, and, as it was offered, it can not be said to have been error to refuse it. It was sufficient, however, to challenge the court's attention, if that were necessary, to what constituted one of the principal defenses upon which the appellant relied, and no instruction was given upon this issue. It would be a bad rule that would not work both ways in a case like this, that would bind the corporation by the contract of employment made with the general manager because he was, as to the appellee, the company itself, and at the same time would deny to the company the right to discharge the same employee for refusing to obey the will of the company expressed through the general manager. If the latter had power to employ, he had power to discharge an unfaithful servant of the company.

For the error in failing to instruct upon this defense, and in unduly restricting the issues, the judgment is reversed and a new trial ordered.