No. 23,850.

SHELDON PETROLEUM COMPANY, *Appellee,* v. EMPIRE GAS & FUEL COMPANY et al., *Appellees* (ABE MARKUS, *Appellant*).

SYLLABUS BY THE COURT.

1. OIL COMPANY—*Presumption of Field Manager's Authority to Dispose of Salvaged Casing—Burden of Proof on Oil Company.* Upon the facts stated in the opinion, it is held that the field manager of an oil and gas company is presumed to possess authority to dispose of salvaged casing, and that the effect of the presumption is to cast the burden of proof upon the corporation to show his lack of authority in the premises and that third persons seeking to bind the corporation had knowledge of the restrictions. (*Manross v. Oil Co.,* 88 Kan. 237, 128 Pac. 385.)

2. SAME—*Foreign Corporation—Kansas Business in Charge of Field Manager—Presumption as to Field Manager's Authority.* Where a foreign corporation

doing business in a state other than that by which it was organized places its business in charge of a field manager, third persons dealing with him as agent of the corporation have the right to assume, in the absence of notice, that his authority extends to all such dealings as are necessary in the conduct of the business from day to day, and may act upon his apparent authority, and are not bound by secret limitations or instructions of which they had no knowledge.

3. SAME—*Sales by Manager Ratified by Company.* Upon the facts stated in the opinion, it is held that sales of salvaged casing made by the field manager of the plaintiff company were ratified and approved by the company after the matter had been investigated.

4. AGENCY—*Ratification of Acts—Principal Must Accept Burdens with Benefits.* The rule applied that "a principal cannot appropriate to himself all the advantages of his agent's unauthorized conduct and repudiate its obligations. Ratification must include the entire act." (*Aultman v. Knoll,* 71 Kan. 109, syl. ¶ 7, 79 Pac. 1074.)

Appeal from Butler district court; ALLISON T. AYERS, judge. Opinion filed October 7, 1922. Reversed.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellant.

*George Gardner, K. W. Pringle,* and *George Austin Brown,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The Sheldon Petroleum Company brought this action to recover the value of certain casing used in drilling for an oil and gas well, and which it claims the defendants converted to their use. The plaintiff prevailed, and Markus appeals.

Plaintiff is a corporation and maintains its principal office at Chicago, Ill. It was organized under the laws of South Dakota for the purpose of drilling a prospective well for oil and gas in Butler county, Kansas, the only business in which it ever engaged. The only property it possessed was purchased and used in connection with drilling the well, and aside from the lease consisted for the most part of the casing in controversy. G. B. Seldomridge, of Winfield, Kan., was the promoter; he acquired the lease; assigned it to the company; and was active in the negotiations which resulted in the incorporation. He was one of the board of directors and a stockholder. The other incorporators were Warren Pease, of Chicago, an attorney, two clerks in his office, and Charles C. Lewis, of Arkansas City, Kan. Pease was chosen secretary and treasurer.

George F. Harding, jr., and Sheldon Clark, both of Chicago, were the principal stockholders. Lewis, Seldomridge and Clark were the only directors who had had any experience in the oil business. Private business prevented Clark and Lewis from giving their personal attention to the business of the company, and at a meeting of the board of directors in Chicago, Seldomridge was appointed field manager and directed to take charge of the business of drilling the well.

One of the principal questions arises from the attempt of third parties dealing with a corporation, through one they claim to be its known and recognized agent, to hold the corporation liable upon contracts made through him.

About February 1, 1918, Seldomridge purchased from the Atlas Supply Company casing to the amount of $13,000, advising Mr. Pease of the price by telegram. Before Pease approved the sale or had received the bills, the casing was delivered on the ground. Seldomridge also entered into oral contracts for drilling the well; bought the lumber and timber for a derrick; arranged for hauling the material and for the labor; and purchased from defendant Markus, who was in the business of selling casing, 4,000 feet of 2-inch pipe used in conveying water to the well. He referred Markus to the Atlas Supply Company with regard to the credit of the plaintiff, and Markus learned from the Atlas people that plaintiff was reliable and that Seldomridge was acting as the company's manager or field agent. The plaintiff company had placed $5,600 in a Kansas bank in escrow to cover the contract for drilling the well to a depth of 2,700 feet, and when that depth was reached Seldomridge drew the money out of the bank and paid it to the contractor on debts of the company. The well proved to be a dry one, and Seldomridge went to Chicago, advised the company to that effect and it was agreed to have the casing pulled from the well and sold as salvage.

Seldomridge first arranged to sell part of the casing to the defendant, The Empire Gas & Fuel Company, through one of its employees, and the casing was removed to the yards of that company at Augusta. Some question having arisen respecting the authority of the employee to make the purchase, it fell through. Seldomridge then sold that casing to the defendant, Markus, who in turn sold it to the defendant, Wasson. Wasson ascertained that the Empire company still had it in possession, and he entered into negotiations which resulted in the sale to that company.

The Empire company answered, in substance, that the plaintiff through its officers held Seldomridge out to the world as its duly accredited agent authorized in all respects to contract respecting material and supplies and to control and manage its business in Kansas; that after the well drilled by Seldomridge for the company proved to be unproductive, the company directed the abandonment of the drilling operations and the sale of the salvage from the well; that Seldomridge sold part of it to defendant Markus, part to Fred Wasson of Wichita, and gave to them on behalf of the company bills of sale covering their several purchases of the material; and that the Empire company purchased the material from Markus and Wasson and paid full consideration therefor.

The plaintiff filed a verified reply denying the agency and authority of Seldomridge. The first sale of the casing was made in May to Markus, and the evidence tended to show that the amount paid was approximately its market value.

One complaint of error is that the court instructed the jury upon the theory that Seldomridge was not a known and recognized agent of the company. It is conceded that he was some sort of an agent, and in our opinion the evidence shows without question that he acted with apparent authority in the sale of the casing. Instead of the burden of proof being upon the defendants to show that his apparent general authority as agent was not a restricted one, we think the burden rested upon plaintiff to show the termination of the general authority of Seldomridge. In *Townsend v. Railway Co.*, 88 Kan. 260, 128 Pac. 389, it was held:

"An act of an agent which is within the apparent but not within the real scope of his authority is binding upon the principal where otherwise loss would result to one who has in good faith relied upon such appearance." (Syl. ¶ 1.)

See, also, *Manross v. Oil Co.*, 88 Kan. 237, 128 Pac. 385, where it was held that the effect of the presumption of law as to the power of the general manager of an oil company to enter into a contract "is to cast upon the corporation the burden of proving the contrary, that is, his lack of authority in the premises and that the person seeking to bind the corporation had knowledge of the restrictions." (Syl. ¶ 2.)

We think the facts, about which there can be no dispute, show that the company voluntarily placed Seldomridge in such a situation that a person of ordinary prudence, familiar with the nature of

the particular business, was justified in presuming that the agent possessed the authority to dispose of the salvaged casing. In the Townsend case, *supra,* it was held:

"An act is within the apparent scope of an agent's authority when a reasonably prudent person, having knowledge of the nature and usages of the business, is justified in supposing that he is authorized to perform it, from the character of the duties which are known to be entrusted to him." (Syl. ¶ 2.)

In that case an instruction was held to be erroneous which charged that although the contract was within the apparent scope of the agent's authority still, unless the company had previously ratified similar acts in excess of his powers, it would not be bound.

It is common knowledge that where such wells prove to be unproductive the casing is usually salvaged and sold unless the owners intend to drill other wells. Here, the sale of the salvage by the agent who had purchased the casing originally for the company, and who had exercised general authority with respect to the business, was not of an unusual or of an extraordinary character. In some of the instructions the court, we think, did not give sufficient weight to the rule that the principal is bound by the contracts of an agent made within the apparent scope of his authority, regardless of limitations of the agent's power, if the person dealing with the agent be ignorant of the limitations. (*Aultman v. Knoll,* 71 Kan. 109, 79 Pac. 1074, and cases cited in the opinion.)

In his deposition Pease, secretary and treasurer of the plaintiff company, told of the arrangement at the meeting in Chicago by which the business in Kansas was placed in charge of Seldomridge. While denying that the latter was general superintendent, he states that he "supposed Seldomridge was field manager." He admits that Seldomridge sent him a questionnaire claiming deferred classification from the draft on the ground that he was the field manager of the corporation, which was engaged in a necessary enterprise, and that he, as secretary and treasurer, made an affidavit to be attached to the questionnaire to the effect that Seldomridge was the field manager. There was evidence showing that a similar affidavit was made by George F. Harding, jr., president of the company. Moreover, plaintiff is a foreign corporation, and was carrying on in Kansas the only business in which it was engaged and for which it was organized. Seldomridge was the only agent it had in Kansas and it is admitted that he was the field manager. Since the company had but one agent in charge of its business here, it is apparent that the

public was compelled to rely upon his apparent authority as its constituted agent, and that the company must be regarded as holding him out as its general agent in Kansas with respect to its business.

"Third persons dealing with the *agent* of a foreign corporation, who has been doing business in a state other than that by which it was created, have the right to assume, in the absence of notice, that his authority extends to all such dealings as are necessary to carry on its business from day to day, and may act upon the apparent authority conferred by the principal upon the agent, and are not bound by secret limitations or instructions qualifying the terms of the written or verbal appointment, of which they had no knowledge." (8 Fletcher Cyclopedia Corporations, § 5728.)

Here, the public knew no one connected with the plaintiff company except Seldomridge. In *Scudder v. Anderson,* 54 Mich. 122, it was held that the general agent and manager of a mining company is presumably empowered to sell its personal property. In the opinion in answer to the contention that sufficient evidence was not given of the agent's authority to sell, it was said: "But if this property was movable property we can see no reason to doubt the power of a general agent and manager to dispose of it. Purchases and sales of personality for use about mining premises must be of frequent occurrence, and would presumably be under the control of the general manager." (p. 124.)

For the purpose of establishing that in fact Seldomridge's authority was a limited and restricted one, plaintiff showed by the deposition of Pease that at the meeting in Chicago after the well proved to be unproductive, Seldomridge was instructed to return to Kansas, pull the casing, obtain bids and report to the Chicago office. Over the defendant's objections, evidence was admitted consisting of letters from Pease to some of the defendants containing statements to the effect that Seldomridge had no authority to sell any part of the casing and that his authority was limited to receiving and reporting bids therefor. In view of the fact that these letters were not written until after the parties to whom they were addressed had parted with the consideration in purchasing the casing, the statements with respect to the restrictions on the authority of Seldomridge were mere self-serving declarations. The burden rested upon the plaintiff to show that any secret instructions limiting the authority of Seldomridge had been communicated to the defendants. (2 C. J. 921, 924; *Aultman v. Knoll,* supra.)

The controversy here is between the principal and a third party, the latter relying upon the apparent authority, with the record dis-

closing the absence of notice to him of any limitation or restrictions upon the authority of the agent. In *Aultman v. Knoll,* supra, it was said: "but in the interpretation of an authority, in a controversy between the principal and a third person, apparent and not actual authority controls, when no limitation has been disclosed." (p. 114.)

We are mindful of the rule that the question whether a reasonably prudent man, familiar with the business, was justified in assuming that the agent had authority to make such a contract, is generally a question for the determination of the jury. (*Townsend v. Railway Co.,* supra.) But for the reason already stated that the public dealing with this corporation in Kansas knew no one connected with the plaintiff, except Seldomridge, it follows as a matter of law that the company must be regarded as holding him out as its general agent in Kansas with respect to its business.

We need not, however, rest our decision upon the point stated. A second defense set up in the answer is that after the sale of the casing had been made by Seldomridge the company investigated the matter and ratified and approved the sales.

Sometime after Seldomridge had pulled the casing and made the sales, Pease sent T. A. Rial, with whom he had been associated in another oil company, to Kansas to investigate the matter of the sale of the casing. He carried letters of introduction to Seldomridge. On July 6 Rial wired Pease as follows:

"Mr. Seldomridge has sold six eight and ten inch casing at highest possible price saw several bidders for twelve fifteen and two inch but Seldomridge offers most of all. Hard to sell large size pipe here now. He offers three dollars for fifteen inch two fifty for twelve inch and ten cents for two inch. Nearest bid was two fifty for fifteen inch or fifty cents less. He sold six eight and ten inch from ten to forty cents higher than best bid today. Cannot sell rig or tank to anyone other than Seldomridge. His offer is seven hundred for rig and tank. He says he will pay for all about fifteenth. I really advise selling to him as this is best can be done. Reply by wire to Cleveland Oklahoma."

On the same day Pease answered by wire, authorizing Rial to accept Seldomridge's offer on the pipe and rig as quoted.

On July 8 Rial sent Pease an itemized statement of the sales account of the casing and rig, in which he said:

". . . I did the best I could in selling this stuff. Seldomridge had sold to the Empire the 10, 8 and 6 inch casing and he sold it well as there is plenty of casing on hand down in that country just now at least. He promised to have to you all money by the 15th. He has closed his deal down at Choloco and is sending the stuff he bought down there. I found him to be a clean fellow

with a good record around Winfield and he did all in his power to assist me in getting other bids on your goods. . . ."

On the day following Pease wrote Seldomridge he trusted "that the matter will now proceed smoothly along the lines of your telegram and Rial's statement of the sale of the stuff and that there will be no further trouble in getting the checks here." In the statement of the sales account sent by Rial to Pease, the latter was informed that the secondhand casing was sold to the Empire company by Seldomridge, the price at which it was sold, also the amount sold direct to Seldomridge by Rial, the letter closing, "Seldomridge agrees to have all money in to you by July 15, 1918."

Pease testified:

"Q. Did you do anything after this sale until the Empire— A. Yes, after we couldn't get anything out of Seldomridge, we wrote to the Empire, wrote them two or three letters."

Both on July 24 and July 27 Pease wrote to the Empire people stating that about the first of July, Seldomridge reported that he had sold certain casing to the Empire company, describing it. In substance it was stated in each of these letters that Seldomridge had advised the plaintiff that a check would be forthcoming for the amount due from the Empire people on July 15, "but we have not heard since from the matter and do not get satisfactory advice from Seldomridge in this regard." In one of the letters it was stated Seldomridge "had been authorized by this company to get bids on this stuff, but it seems he took the authority to sell it without submitting bids." Pease wrote on July 24 to Seldomridge himself stating, "We cannot understand why the Empire people have not paid the amount due from them. . . . I have therefore written the Empire people direct asking for immediate remittance. . . . Rial's report was that you agreed with him to have all money in my hands by July 15."

It was in these letters written after July 15 that Pease attempted to convey notice to the defendants to the effect that the authority of Seldomridge in the first instance had been limited to receiving bids. There was no evidence offered to show that any notice to this effect came to the defendants prior to the time in which they parted with the consideration.

Pease himself testified that the company trusted Seldomridge until they became suspicious of him in July, after the time in which he had agreed to send the money or checks for the casing; that the

company sent Mr. Cornelius to Kansas to "run Seldomridge to earth. We had come to the conclusion that we had been deceived." There was also evidence tending to show that the company brought a suit and attached or attempted to attach property of Seldomridge for the purpose of realizing upon a part of this indebtedness, if not all. Seldomridge in the meantime had gone to Colorado Springs. The company had a fugitive warrant issued for his arrest, charging him with the larceny of the casing, and got a requisition for his arrest in Colorado. The governor of Colorado refused to grant extradition. and it appears that about two months thereafter Seldomridge committed suicide.

We think the evidence shows conclusively that Pease, acting for the plaintiff company, ratified the act of Seldomridge when it was supposed the latter had extended credit to the Empire company for the casing, and that afterwards, when it learned that Seldomridge had collected the money, it endeavored to collect the proceeds from Seldomridge himself, sending an agent to Kansas for that purpose, and now relies upon letters written long afterwards to the defendants attempting to restrict and limit the authority of the general agent.

We have here, then, a case where the principal seeks to appropriate to himself the advantages of the sale made by one he claims exceeded his authority as agent, and at the same time repudiate the obligations incurred by the same act of the agent. In *Aultman v. Knoll,* supra, it was ruled—

"A principal cannot appropriate to himself all the advantages of his agent's unauthorized conduct and repudiate its obligations. Ratification must include the entire act." (Syl. ¶ 7.)

In that case it was held further that—

"When a principal adopts the unauthorized act of his agent, and brings suit to secure its benefits, he cannot escape its liabilities by claiming ignorance of some of the facts. He is obliged to inform himself of the scope of the unauthorized performance, or be bound to the same extent as if he had done so." (Syl. ¶ 5.)

"Proof of ratification includes proof of agency and authority, and may be made under a pleading charging the ratified act to be that of the principal." (Syl. ¶ 6.)

To the same effect see *Babcock v. Deford,* 14 Kan. 408; *Ehrsam v. Mahan,* 52 Kan. 245, 34 Pac. 800.

For the reasons stated, it follows that the case will be reversed and the cause remanded with directions to enter judgment for the defendant, Markus.