J. T. MAJORS & SON, INC., Appellant,

v.

LIPPERT BROS., INC., Appellee.

LIPPERT BROS., INC., Cross-Appellant,

v.

J. T. MAJORS & SON, INC., Cross-Appellee.

Nos. 5957, 5958.

United States Court of Appeals Tenth Circuit.

Dec. 30, 1958.

Leon Shipp, Oklahoma City, Okl. (Robert S. Johnson, Topeka, Kan., on the brief), for appellee and cross-appellant.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellee-defendant, Lippert Bros., Inc.,[1] had the prime contract for the construction of an abbey at Atchison, Kansas, and made a subcontract with appellant-plaintiff, J. T. Majors & Sons, Inc.,[2] for the masonry work. Majors completed performance and brought suit alleging nonpayment for certain work done. Jurisdiction is based on diversity of citizenship.

The first claim relates to the cleaning of interior masonry and the second claim to the cleaning of exterior masonry. As to each of these claims the trial court directed a verdict in favor of defendant Lippert. The third claim covering the alteration of anchor holes was submitted to the jury which allowed the plaintiff a recovery of $4,322.73. As to this claim Lippert through a third-party complaint asserted that the liability, if any, was that of Forburger Company, Inc. After verdict, the court on its own motion reduced the recovery to $1,688.80 and entered judgment for that amount. The issues under the third-party complaint were settled by agreement. The fourth claim involved the pointing of terrazzo and the jury allowed recovery. Here also there was a third-party complaint, this time alleging that the liability was that of Advance Terrazzo Co., Inc., and a settlement was made by agreement.

Majors has appealed from the actions of the trial court in directing a verdict as to claims one and two and in reducing the jury verdict on claim three. Lippert filed a cross-appeal contending that there should be no recovery on the third claim but subsequently moved to dismiss that cross-appeal.

Leonard O. Thomas, Kansas City, Kan., and Maurice P. O'Keefe, Atchison, Kan. (Stanley, Schroeder, Weeks, Thomas & Lysaught, Kansas City, Kan., and O'Keefe, Root, McKelvy & O'Keefe, Atchison, Kan., on the brief), for appellant and cross-appellee.

1. Hereinafter referred to as Lippert or as prime contractor.

2. Hereinafter referred to as Majors or as subcontractor.

The first two claims, which present the question of whether Majors is entitled to be paid for cleaning masonry, may be considered together. The subcontract provided that Majors, the subcontractor, was "to furnish labor to install masonry work as follows." The itemization which follows contains 12 items with unit prices covering various types of brick, stone, tile, glass blocks, and granite. No reference is made to cleaning. The subcontract contains the common provision requiring extra work or changes to be agreed to in writing.[3] The subcontractor agreed to be bound by all terms and conditions of the general contract. The specifications made a part of the prime contract had two provisions relating to cleaning.[4]

Before the execution of the subcontract the prime contractor had laid about 18,000 brick and between 4,000 and 4,500 feet of split-faced stone. The subcontractor cleaned this brick and stone as well as all masonry laid by it. The basis of its first two claims is that the subcontract required Majors to "install" but not to "clean," and that the cleaning was done by it under an oral agreement with the prime contractor's construction foreman. Lippert contends that the term "install" includes cleaning, that the construction superintendent had no authority to make any oral contract with Majors, and that the provisions of the subcontract requiring agreements for extra work or changes to be in writing precludes any such oral agreement.

Majors, asserting that the subcontract had a latent ambiguity, offered evidence of precontract conversations tending to show an intent not to include cleaning. The court held that the contract was not ambiguous and rejected the offer. Majors also offered testimony as to the technical meaning of the term "install." This was received together with rebutting evidence with the result that there was a confusing conflict from which the conclusion can be reasonably drawn that when masonry work is covered by a lump sum contract cleaning is included but when it is a unit contract cleaning is not included unless specified.

 Here we have a subcontract itemizing the work and providing for compensation on a unit basis. The reference to the general contract is unimportant. The obligation on the prime contractor to clean does not automatically fall on the subcontractor.

It is significant that Majors cleaned the brick and cut stone that had been laid by the prime contractor before the execution of the subcontract. No possible interpretation of the itemizations contained in the subcontract required it to do so. The testimony of an official for Lippert that payment for such work was made under "negotiated" quantities is far from convincing.

 In the circumstances of this case it cannot be said with certainty what the parties meant by the use of the word "install." The subcontract is ambiguous as the intention of the parties cannot be ascertained therefrom. In such a situation "the background against which the contract was executed and the circumstances attending its execution should be taken into consideration as an aid to the ascertainment of such intent."[5] The trial court erred in rejecting the evidence as to the preliminary negotiations between the parties. While the interpretation of contractual language is a question of law,[6] in a sit-

---

3. The provision is: "No extra work or changes under this contract will be recognized or paid for unless agreed to in writing by the Contractor [Lippert] before the work is done or the changes made. No oral agreements will be made by either party."

4. As to stone work it provided: "The face of all stone work shall be cleaned upon completion, an approved cleaning compound being used. Acid shall not be used on cut stone work." The requirement as to brick work was: "All brick work shall be thoroughly cleaned and pointed as directed by the Architect."

5. Moore v. Jones, 10 Cir., 215 F.2d 719, 721, and Kansas authorities there cited.

6. United States v. Nickel, 10 Cir., 243 F.2d 924, 925.

uation such as this where meaning depends on extrinsic evidence, there may result a material conflict or the possibility of more than one reasonable inference, either of which could present a question of fact rather than law.[7] We are unable to say whether on retrial such a factual issue will be presented.

The trial court directed a verdict as to claims one and two on the ground that there was no showing of authority in Lippert's construction superintendent to contract with Majors for the cleaning. The record shows that such superintendent, who had no superior officer in Kansas, hired, fired, directed, and paid the workers on the job. He ordered and paid for certain supplies but his check-writing authority was limited. A vice-president of Lippert testified that the superintendent had no authority to bind Lippert either orally or in writing. The superintendent admittedly kept a record of the time spent by Majors in the cleaning operations but did not keep such records in regard to other work done by Majors. An offer of Majors to prove its oral contract with the superintendent for the cleaning was rejected on the ground that there was no proof of his authority to bind Lippert.

An official of Majors testified that the superintendent was "in full charge" and was "the man we had to go to for everything." Lippert knew that the cleaning work was being done as its vice-president testified that the cleaning of the brick and stone laid before Majors went on the job was paid for by "negotiated" quantities. Lippert did not notify Majors of any limitation on the superintendent's authority. Lippert has acknowledged liability under the superintendent's oral agreement for the alteration of the anchor holes.[8] Certainly the evidence is sufficient to justify the reasonable inference that the superintendent had authority to bind his principal. The question of authority of an agent is ordinarily one of fact.[9]

Lippert insists that even assuming such authority the provisions of the subcontract precluding oral agreements for extra work or changes has the controlling effect of preventing recovery. Such a provision is valid but in the absence of the applicability of any statute of frauds it may be waived, modified or rescinded by a subsequent oral contract.[10] While an intent to waive, modify or rescind must be shown, that may be inferred from the actions of the parties. The conduct of Lippert was such as to permit the reasonable inference that it intended to waive or modify the contract provision on which it now relies. The question of intent is usually one of fact.[11]

It is settled law in Kansas that a principal cannot receive and retain the benefits of a transaction, and at the same time deny the authority of the agent to enter into that transaction.[12] In the instant case Lippert

---

7. Hawkins v. Frick-Reid Supply Corporation, 5 Cir., 154 F.2d 88, 89; 17 C.J.S. Contracts, § 617, p. 1284. Cf. Brown & Co. v. McGran, 14 Pet. 479, 493, 39 U.S. 479, 493, 10 L.Ed. 550; S. S. Kresge Co. v. Sears, 1 Cir., 87 F.2d 135, 140, 110 A.L.R. 583, certiorari denied 300 U.S. 670, 57 S.Ct. 512, 81 L.Ed. 876; United States v. Northern Pac. Ry. Co., 8 Cir., 188 F.2d 277, 280.

8. While Lippert may recognize liability under the one oral contract and deny liability in another instance on the ground of lack of authority, the acceptance of liability in one instance certainly affects reasonable belief in authority in another instance.

9. American Nat. Bank of Sapulpa, Okl. v. Bartlett, 10 Cir., 40 F.2d 21, 22.

10. See annotation in 66 A.L.R. 649, 662. Kansas follows this rule. See Bailey v. Norton, 178 Kan. 104, 283 P.2d 400, 403–405, citing 17 C.J.S. Contracts § 371(3), p. 850, and 9 Am.Jur. Building and Construction Contracts § 23, pp. 17–18.

11. Welton v. 40 East Oak St. Bldg. Corporation, 7 Cir., 70 F.2d 377, 378, certiorari denied Chicago Title & Trust Co. v. Welton, 293 U.S. 590, 55 S.Ct. 105, 79 L.Ed. 685; 88 C.J.S. Trial § 219, p. 502.

12. Bank of Lakin v. National Bank of Commerce of Kansas City, 57 Kan. 183,

knowingly permitted Majors to clean the masonry and accepted the benefits arising therefrom. If the subcontract did not require Majors to do that work, then the questions of waiver of the pertinent provisions of the written contract, apparent authority of the superintendent, existence and terms of an oral contract for cleaning, estoppel, ratification, and unjust enrichment may be pertinent. We can resolve none of them on the record now before us.

The third claim related to the alteration of the anchor holes. The evidence was that in the construction of a stone wall of the type involved each stone must be fastened in the wall by means of metal rods. These rods are of two types known as "anchors" and "cramps." The stones made available to Majors had holes for these rods but they were too small and were improperly shaped for the rods which were furnished. Majors was required to alter the holes so that the rods would fit. The difference between the parties is in the number of holes that had to be altered.

■ The president of Majors testified that an average of three holes had to be altered on each of over 3,000 pieces of stone. The work was valued on a time basis plus certain overhead charges. Majors submitted an itemized bill to Lippert in the amount of $4,432.78.[13] The jury returned a verdict on this claim in favor of Majors for $4,322.73. After the return of the verdict Lippert moved orally for judgment notwithstanding the verdict. There ensued a colloquy among court and counsel which added nothing to the clarification of any issue. The court announced an intent to reduce the verdict. Majors' counsel then objected and asked time either to remit or to move for a new trial. This was denied. The court ordered that the verdict was reduced to $1,688.80. No ruling was made on Lippert's oral motion. Thereafter each party moved for a new trial and each motion was denied. Lippert filed a cross-appeal on the recovery on this claim and has now moved to dismiss that cross-appeal. This eliminates any necessity for consideration of its motion for judgment notwithstanding the verdict.

The trial court apparently was impressed by the facts that the third claim of the complaint referred only to anchors and the defense testimony was that 3,800 anchors were supplied for the job. The reduction was on the basis that recovery had to be limited to the amount which would compensate for the alteration of one hole per anchor.

■ The third claim sought unliquidated damages for breach of contract.[14] It is the function of the jury, and not the prerogative of the court, to determine the amount of damage and the determination of the jury, if based on substantial evidence or reasonable inference therefrom, must be upheld in the absence of an error of law or a showing of passion or prejudice.[15]

The third claim alleged oral employment for work in "cutting and straightening anchor holes on stone." Lippert contends that this limits recovery to work done on anchor holes. The validity of such argument depends on the difference between a cramp and an an-

45 P. 587. See also Adrian v. Elmer, 178 Kan. 242, 284 P.2d 599, 603; Sinclair Refining Co. v. Vaughn, 135 Kan. 82, 9 P.2d 995, 996; Sheldon Petroleum Co. v. Empire Gas & Fuel Co., 112 Kan. 73, 209 P. 826, 830; Isaacs v. Jackson Motor Co., 108 Kan. 17, 193 P. 1081, 1082.

13. Lippert attempts to make much of an error in this bill. Such error was in a simple and obvious arithmetical computation. No one was misled or prejudiced by it.

14. There were disputes as to both the number of altered holes and as to the cost of alteration per hole.

15. U.S.Const. Amend. 7; Walker v. New Mexico and Southern Pacific Railroad Company, 165 U.S. 593, 596, 17 S.Ct. 421, 41 L.Ed. 837; Slocum v. New York Life Insurance Co., 228 U.S. 364, 385–386, 33 S.Ct. 523, 57 L.Ed. 879; Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603.

chor. Each is a device to hold a block of stone in place.[16] A witness for Majors stated that a cramp "is just an anchor." The stone foreman for Majors testified as to the necessity for alteration of the holes for both cramps and anchors. The record shows that about 2,600 cramps and 3,800 anchors were used. There is nothing to indicate that Lippert was misled by the reference to anchors in the complaint. The query is not how many anchors or cramps were used but how many holes had to be altered. As to this the evidence for Majors was that there were about 3,000 stones on which an average of three holes each had to be altered.

The peremptory action of the trial court in reducing the verdict was improper. There was no claim of error of law or of passion and prejudice. If the court felt that the verdict was excessive the proper procedure was to afford the plaintiff an opportunity to make a remittitur if it desired and if it did not choose to do so, to grant a new trial.[17] But the circumstances in this case did not justify even that action. There was substantial evidence to sustain the verdict and no errors of law occurred in the submission of the issue to the jury. The verdict must be reinstated,[18] and judgment entered in accordance therewith.[19]

Forburger Company, Inc., a third-party defendant below, has filed a motion to dismiss the appeal as to it. The motion is not in order and cannot be considered as neither the appeal nor the cross-appeal designate Forburger as a party. The motion of Lippert to dismiss the cross-appeal is granted. As to the first and second claims set out in the complaint the judgment is reversed for further proceedings in accordance with the views stated herein. The judgment on the third claim is reversed with directions to enter judgment in conformity with the verdict of the jury. The judgment on the fourth claim is not questioned and is accordingly affirmed. Costs will be assessed against the appellee.

16. Webster's New International Dictionary, 2d Ed., defines the word anchor as used in building thus: "A device, as a metal tie, for giving stability to one part of a structure by making it fast to another, as a beam to a wall, one wall to another, or (in this case specif. called cramp or cramp iron) a stone facing, as an ashlar, to rough masonry behind it." The same dictionary defines cramp as: "A device, usually of iron bent at the ends or of dovetail form, used to hold together blocks of stone, timbers, etc."

17. Kennon v. Gilmer, 131 U.S. 22, 29, 9 S.Ct. 696, 33 L.Ed. 110; Bucher v. Krause, 7 Cir., 200 F.2d 576, 588. Cf. Neese v. Southern Railway Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60.

18. Readnour v. Commercial Standard Insurance Company, 10 Cir., 253 F.2d 907, 908.

19. 28 U.S.C. § 2106; Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F. 2d 140, 141; Standard Oil Company v. Brown, 5 Cir., 238 F.2d 54, 56; Pettingill v. Fuller, 2 Cir., 107 F.2d 933, 936; Finn v. American Fire & Casualty Co., 5 Cir., 207 F.2d 113, 115; Moore's Federal Practice 2d Ed. Vol. 6, § 59.15 (3), p. 3904.