AUSTIN H. PHELPS, PLAINTIFF IN ERROR, v. THE FUCHS & LANG MANUFACTURING COMPANY, DEFENDANT IN ERROR.

Submitted July 10, 1911—Decided November 20, 1911.

1. The plaintiff brought his action to recover damages for an unlawful discharge. It appeared that he was employed as chief clerk in defendant's factory, subject to the supervision and direction of defendant's superintendent; that he had an altercation with another clerk who disputed his authority, and the superintendent, having heard the explanation of plaintiff, informed him that he had exceeded his authority, whereupon the plaintiff said, "Well, I will quit," and followed this by turning over to another clerk the key to the cash drawer and leaving the factory, taking with him certain of his personal effects, and did not return to work. *Held*, that plaintiff's subsequent disclaimer of any intent to quit defendant's service was not sufficient to overcome his declared intention to quit and his subsequent acts in execution of such purpose, and that a nonsuit allowed upon this state of facts was not error.

2. An appellate court will not hear reasons in favor of the competency of testimony overruled at the trial which were not disclosed to the trial court, and are first suggested on the argument of the writ of error issued to review such action of the trial court.

On error to the Bergen County Circuit Court.

For the plaintiff in error, *Mackay & Mackay.*

For the defendant in error, *Collins & Corbin.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff's case, as set up in his declaration, is based upon his alleged unlawful discharge from service by the defendant, in violation of a written agreement of

employment existing between the plaintiff and defendant. By the terms of the contract the defendant agreed to employ plaintiff for a period of five years, beginning July 1st, 1908, at the rate of $30 per week, and plaintiff agreed to devote his entire time during that period to the business of the defendant, as chief clerk in its factory at Rutherford, New Jersey, under the supervision and direction of Mr. Ford, the defendant's superintendent, or of any of defendant's officers. The trial court ordered that a judgment of nonsuit be entered at the close of plaintiff's case, to which direction the plaintiff excepted, and a bill of exceptions being sealed, assigned error thereon. The case made by the plaintiff was as follows: On April 11th, 1910, he had an altercation with defendant's shipping clerk, and being asked by Mr. Ford, by telephone from the New York office, about the matter, he gave his version of the situation, after which, the plaintiff testifies, "He told me I was exceeding my authority; and I asked him if he was coming out that day; he said he didn't know. I then said, 'Well, I will quit.'" After waiting until the arrival of the next train from New York and some time between ten and eleven o'clock, he left the factory, taking with him the certificate of his appointment as notary public and his notarial seal, and turned over to another employe the key to the cash drawer. On the afternoon of the same day he went to the New York office and saw the treasurer of the defendant company, and told him, "I could not carry on the business of the office to their satisfaction or mine if I didn't have the authority over the clerks, and if they were going to do as they pleased, why I could not maintain any discipline there at all." The treasurer advised him to see Mr. Ford, which he did on the 13th of April, and explained what he had told the shipping clerk to do and what the clerk had refused to do, and then, without any previous reference to his relation to the company, said to Mr. Ford that he had not quit, but, on the contrary, had been discharged, and to this Mr. Ford replied that he had not been discharged, but had voluntarily quit the service of the defendant. From the time plaintiff left the factory, just after he told Mr. Ford he would quit, until this conversation, nearly three days later, he had not returned to the factory nor at-

tempted to serve the defendant. There is no evidence to support the averment in the plaintiff's declaration that he had been discharged unless such an inference can be drawn from Mr. Ford's denial of a discharge, and his claim that plaintiff had voluntarily quit defendant's service. Such an inference cannot be properly drawn from anything said or done by Mr. Ford, taken in connection with the previous conduct of the plaintiff, who had attempted to exercise an authority over another employe, which Mr. Ford, under whose directions and supervision he had agreed to serve, denied he possessed, and he then informed Mr. Ford that he would quit the service of the company, apparently for the reason that he was denied authority to direct the services of the shipping clerk. He followed his statement that he would quit, by turning over to another clerk his key to the cash drawer and leaving the factory, taking with him his notarial seal and certificate. He then went to the treasurer of the company for the avowed purpose of having the direction of Mr. Ford overruled, saying, in effect, that he could not successfully serve the company unless he was given an authority which Mr. Ford refused, and having failed in this purpose, he did not accept the situation and return, or attempt to return, to his work, but remained away. All that Ford did was to insist that the plaintiff had quit, and if such insistence was justified by plaintiff's words and conduct, and we conclude it was, no illegal discharge could be implied from facts which conclusively demonstrated that the plaintiff had abandoned the service.

Our conclusion is that the case proved by the plaintiff failed to show a discharge; on the contrary, it conclusively shows that the plaintiff quit the service of the defendant of his own motion because he was denied authority over the shipping clerk without which he was unwilling to remain in defendant's service. His subsequent repentance, if he did repent, would not destroy the effect of his previous notice to the defendant that he would quit its service, following it by acts indicating the execution of such purpose, in which the defendant apparently acquiesced.

The nonsuit was properly allowed, and we find no error in the action of the trial judge in that regard.

The next assignment of error argued relates to the following question which the trial court overruled: "*Q.* As head clerk, what were your duties in this place?" It is urged, in support of the competency of this question, that its purpose "was to show that the defendant in error had required the plaintiff in error to perform other duties than those mentioned in the contract, and to show what control he exercised over the employes of the defendant in error." No such purpose was disclosed to the trial court, the question was there urged upon the ground that the contract "did not say what the particular duties are in detail." The trial court refused the question upon the ground that the contract did define plaintiff's duties, and a reference to the contract will support the conclusion of the court. The plaintiff's claim is rested upon an alleged illegal discharge, and he testified that he performed all his duties under the contract, so it was quite immaterial what those duties were in that aspect of the case, but the trial court having considered the reasons offered in support of the legality of the question, and determined its propriety in view of the reason given, it is now too late, for the first time in an appellate court, to offer other reasons not suggested to the trial judge.

The only remaining assignment argued challenges the action of the trial court in permitting defendant's counsel to ask the plaintiff, on cross-examination, the question: "*Q.* You didn't have anything that you expected to use it for that evening that you knew of, did you?" The only objection interposed was that the question was not relevant. We are of opinion that this cross-examination was proper and competent, for plaintiff had testified that he carried his notarial seal, to the using of which the question was directed, away from the factory because he wanted to use it at home, and that he did not intend by such act to indicate that he had quit the service of the defendant. It was quite relevant to show that the purpose, which he subsequently declared, for removing the seal from the factory was not in fact true and this, the evidence admitted, had a tendency to show.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 13.

*For reversal*—None.