REECE M. PEDICORD V. ELM GROVE MINING COMPANY, *et al*

(No. 6830)

Submitted February 10, 1931.   Decided February 17, 1931.

*Alan McKee, David A. McKee* and *Charles J. Coniff,* for appellant.

*Schmidt, Hugus & Laas,* for appellees.

Woods, Judge:

This is a suit for injunctive relief. By it the appellant, Reece M. Pedicord, sought to enjoin and inhibit Elm Grove Mining Company, a corporation, and Raymond H. Lewellyn, from interferring with the carrying out and enforcement of a certain alleged contract, dated the 7th day of December, 1928, and covering a period of five years beginning January 1, 1929, and ending December 31, 1933, made between the Elm Grove Mining Company by its general manager and appellant. The circuit court of Ohio county, after consideration of the testimony taken on motion to dissolve, sustained the motion and dismissed plaintiff's bill.

Dr. Pedicord had, prior to August 1, 1927, been engaged in practice of medicine in and around defendant's mining operations at Elm Grove, and was at the time serving a majority of the miners. He seems to have been very friendly with the general manager, Joseph Arkwright, and the two, in conformity with an outline prepared by Fulmer, safety director, entered into an understanding whereby Pedicord would perform certain services for the men and company in exchange for a check-off, by the company, of seventy-five cents each pay day from each employee. This arrangement continued until the middle of 1929.

Prior to putting the check-off into effect the safety director had the following memorandum printed and circulated among

the employees: "Elm Grove, W. Va. * * * I hereby agree to the employment of R. M. Pedicord, M. D., by the month and authorize the Elm Grove Mining Company to deduct from my pay 75c each pay for the services of said physician. All sickness to me and those dependent on me to be treated for the above fee. All operations to me and my dependents, not covered by State Compensation, shall be done for 50% regular customary fee. Confinement cases to be treated for 50% customary fee. Signed............................................................... Witness..............................................." About 80% of the 1100 miners then in the employ of the company signed. Men later taken into employ were required to sign. The doctor was paid this check-off every two weeks, beginning with August 1, 1927. On August 4, 1927, Arkwright wrote to the several directors of the Valley Camp Coal Company, the operating corporation, in regard to the results obtained through the services of a safety director. This letter contained the following paragraph: "You will also note the attached contract covering Company doctor effective at three Elm Grove mines August 1, 1927." The "so-called" contract, which contained a list of the duties of the doctor, and a statement in regard to a 75c check-off, to be handled by the company, was headed: "Proposed plan for contracting, to some competent physician, medical and surgical services for the employees of the Elm Grove Mining Company." On December 7, 1928, the paper, purporting to be a contract between Elm Grove Mining Company of the first part, and Pedicord of the second part, was executed on behalf of the company "By Joseph Arkwright, general manager." It recites, among other things: "That whereas the party of the first part proposes to act as agent for its employees in securing for them certain privileges and benefits, and among other things desires to procure said employees reduced rates for medical services, and to act as agent for the party of the second part in collecting his fees; Now, Therefore, in consideration of the premises and the mutual covenants hereinafter contained, the said party of the second part agrees that he will contract directly with the said party of the first part to furnish all employees of said first party complying with

the stipulations required by it, and will render to them and to the members of their families dependent on them, certain limited professional services, hereinafter defined, *for a period of five (5) years,* beginning on the 1st day of January, 1929, and ending on the 31st day of December, 1933.''

Two questions are raised on appeal: (1) Is there a contract? and if so, (2) is it such a contract as may be, under the circumstances, enforced by injunction?

The validity (and hence the existence) of the alleged contract, upon which appellant seeks relief, rests primarily upon whether or not Arkwright had authority, as general manager, to bind the company for a period of five years. If he had no such authority, then a ratification must be shown on behalf of the company. A corporation always acts only through its agents duly authorized by its by-laws or by the board of directors.

Arkwright had been placed in charge of the several holdings of the Valley Camp Coal Company, including Elm Grove Mining Company interests, as general manager, and therefore, in the absence of limitations, had implied authority as such manager over such matters as came within the scope of the company's ordinary business. *Kelly Convertible Wagon Co.* v. *Rhodes Mfg. Co.,* 102 W. Va. 16, 18; *Stewart* v. *Blackwood Electric Steel Corp.,* 100 W. Va. 331, 340; *Rua* v. *Bowyer Smokeless Coal Co.,* 84 W. Va. 47; *Carroll-Cross Coal Co.* v. *Abrams Creek Coal Co.,* 83 W. Va. 205; *Thomas* v. *Kanawha Valley Traction Co.,* 73 W. Va. 374. In other words, he had authority to bind the corporation by the employment of such agents and employees as were usual and necessary in the conduct of such business. 7 R. C. L. 628; 2 R. C. L. Sup. 419; 14-A C. J. 430, sec. 2283, and cases there cited. And while the weight of authority seems to be to the effect that he may make a contract of employment for one year, on the theory that such a contract ordinarily is not for an unusual or extraordinary length of time *(Manross* v. *Uncle Sam Oil Co.,* 88 Kans. 237, 128 Pac. 385), such period may be limited or augmented by the prevailing custom. *Reupke* v. *Stuhr & Son Grain Co.,* 126 Iowa 632, 102 N. W. 509. He is not permitted, however, in the absence of express authority, to make

contracts for a long future period. But nowhere in the by-laws of the corporation or the minutes of the board of directors is the general manager given power to make contracts for an unusual or extraordinary length of time. Admitting that other companies had been checking-off wages for medical services, there is nothing in the record tending to show a written contract in any instance, or that it was customary to hire physicians for a long period of time. The memorandum, which the appellant claims to be a contract between himself and the men, only provided for appellant's service "by the month". The letter of August 4, 1927, to the several directors does not give notice of intent to hire for five years, or even a year. And the enclosure in that letter made no reference to time. Even the letter of September, 1928, to J. A. Paisley, which says that "Within the near future we will see what can be done to install company doctors at Soudan and Kinlock mines," etc., does not intimate a long term contract. The fact that Arkwright signed notes on behalf of the company does not aid Pedicord, since this authority was bestowed upon him as treasurer, not as general manager.

As to ratification, it appears that the alleged contract, after being executed, was filed away in the office of the general manager, at Elm Grove office, and was not discovered until sometime after Arkwright's resignation in May, 1929. Not a word appears in the correspondence to the effect that such an instrument had been signed. The enclosure in the letter of August 4, 1927, was not notice of even an intention to execute a written contract of any nature, especially one of unusual duration. Arkwright does state that he took the matter up at the meeting of the directors, but he cannot say definitely which one. But this fact is denied by the directors called to testify. There could be no ratification in the absence of knowledge of the existence of the contract. The fact that the check-off was paid from the Cleveland office during the last few months of Arkwright's managership did not put the directors on notice of the five year contract. In addition to this, there was testimony to the effect that Pedicord had made the statement that he did not need a contract while Arkwright was in charge. The whole record seems to

show an air of secrecy on the part of the contracting parties. In this state of the evidence, the finding of the trial court cannot be disturbed. Being of this opinion, it becomes unnecessary to discuss the second question, which presupposes a valid, binding contract.

The decree of the circuit court is therefore affirmed.

*Affirmed.*