[S. F. No. 15474. In Bank.—February 28, 1936.]

GEORGE R. FREEMAN et al., Respondents, v. RIVER FARMS COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

432

John E. Truman for Appellants.

John L. McNab and Robert Littler, as *Amici Curiae* on Behalf of Appellants.

George R. Freeman, *in pro. per.*, for Respondents.

THOMPSON, J.—A dismissal having been filed as against all defendants except the River Farms Company, there is but one defendant involved herein, although by the title it appears otherwise.

Plaintiffs brought this action to recover from defendant the amount due for work done for The Sacramento River West Side Levee District by way of repairs to the levee on the west

side of the Sacramento River, north of Knights Landing and adjacent to lands owned by the defendant. It appears that the district comprises about 107,000 acres and that the defendant owns about 30,000 acres in the southern portion of the district; that for a few years subsequent to 1915 the usual procedure followed by the district in paying for work was to issue its warrants to the contractors; that thereafter an assessment would be levied for the purpose of retiring the warrants. However, later on, and particularly commencing in 1929, conditions became so bad that the district "could do no work and compel the contractors to take warrants, for which reason the district was obliged to make arrangements with some bank or landowner whereby the bank or landowner would agree to cash the warrants for the contractor". In fact, the district had an agreement with Dr. Dow as president of the defendant if it would not call on him for any financing for the thirty miles north of defendant's land, that when it became necessary to do work along the twenty miles of the water front of defendant's land, he would see to it that the warrants were financed. When the particular work involved in this case became necessary Dr. Dow told the board of commissioners of the district to instruct any contractor who might be interested in doing the work to see him about cashing the warrants. Prior to the time plaintiffs' bid on the present work, one of them called Dr. Dow on the telephone and asked "if the River Farms Company would pay the warrants". Upon assurance that it would, plaintiffs bid upon and secured the work. Had it not been for that assurance, it was testified, plaintiffs would not have submitted a bid. The work was completed. Dr. Dow died and the River Farms Company refused to take up the warrants at a five per cent discount. This action was accordingly brought, and judgment having gone for plaintiffs, the defendant prosecutes this appeal.

The trial court found, among other things, as follows: "That said agreement between defendant and the Board of Commissioners of said Levee District (t)o buy or cash said warrants was made expressly for the benefit of the successful bidder for such contemplated work and that after the making of said agreement and prior to the making of any contract by plaintiffs with the Board of Commissioners of said Levee District for the performance of said work, and prior to the doing of any of said work provided in said contract, defend-

ant agreed with plaintiffs to accept the said warrants so to be issued by said Levee District if and when they were issued and to pay therefor the face value of said warrants less a discount of five per cent, said face value to include the interest accrued thereon to the date of delivery of said warrants to defendant, and the Court finds that plaintiffs would not have entered into a contract with the Levee District and would not have performed any of the work in said Levee District without such agreements on the part of defendant, and the Court further finds that defendant knew that plaintiffs contracted to do said levee work for said Levee District upon the faith of said agreement between the Levee District and the defendant and upon the faith of the contract between these plaintiffs and the defendant, and knew that plaintiffs would not have performed said work had it not been for said agreements and each of them; and the Court further finds that in consideration of the promise of the defendant corporation to pay for said work, plaintiffs did perform said work in compliance with the requirements of the engineer of the district.'' A reading of the transcript reveals that the quoted finding is supported by substantial testimony. Briefly stated, the appellant contends that the president of appellant could not bind it to take the warrants; that there is a fatal variance between an allegation that the contract was for the benefit of respondents and the proof to the effect that the contract was made directly with appellant; that the contract being an agreement to purchase warrants, and being oral, is invalid by reason of the statute of frauds; and lastly, that plaintiffs did not sustain the burden of proof.

We have, in effect, already passed upon the last of these contentions. ■ The most serious of the remaining is the assertion that the contract is invalid. But as we view the situation, and as the trial court held, it cannot be sustained. It was necessary to the protection of appellant's lands that repairs be made to the levee prior to the danger of flood waters in the year 1930–1931. The levee district was charged with that responsibility, it is true, but the appellant was the concern vitally interested therein. There can be no doubt that appellant had the right under such circumstances to take such action as was essential or advisable to the protection of its property. The district was apparently at a loss to secure the work to be done without the assistance and cooperation of

a third party. The logical answer was to seek the assistance of the concern, the property of which would be endangered by high water. The contractors would not bid without such cooperation. The result was that the contractors offered to do the work if the appellant would pay therefor, by taking the warrants and giving them the money. It was as though the contract were triangular. The plaintiffs performed everything on their part to be performed and appellant should be compelled to pay therefor. In other words, we cannot view the contract as one simply for the purchase of the warrants, but as a contract for performance of work for which appellant was to pay through the medium of accepting the warrants and giving cash. Under such circumstances the plea of the statute of frauds must fall. That the trial court viewed the matter in the same light is evident from the finding we have already quoted.

■ This disposition of the point practically eliminates the argument that there is a fatal variance between the allegations and the proof, although it should be added that an amendment was permitted to conform to the proof, to the effect that there was a direct agreement between plaintiffs and appellant, as well as the agreement first alleged between the district and respondents.

■ Finally, with respect to the argument that the president of the company was not authorized to bind the company by either actual or ostensible authority, it must be said that appellant cannot prevail. The by-laws of appellant disclose that the president was given the power to ''make and sign agreements in the name and behalf of the company'', and also ''the general and active management of the business and affairs of the company''. It cannot be successfully contended that under this provision the president would not have been authorized to take action to prevent the flooding of appellant's land. (See *Western Lithograph Co.* v. *Vanomar Producers*, 185 Cal. 366 [197 Pac. 103], and cases there cited.)

The fact that the contract took a form different from the one we might ordinarily expect to find should make no difference. In truth, apt language is found in *Woods Lbr. Co.* v. *Moore*, 183 Cal. 497, 502 [191 Pac. 905, 11 A. L. R. 549], as follows: ''With respect to the means which the corporation may adopt to further its objects and promote its business its managers 'are not limited in law to the use of such means as

are usual or necessary to the objects contemplated by their organizations, but, where not restricted by law, may choose such means as are convenient and adapted to the end, though that be neither the usual means, nor absolutely necessary' for the purpose intended. (*Winterfield* v. *Cream City B. Co.*, 96 Wis. 239 [71 N. W. 101].)'' We think appellant falls into the error of concluding the agreement to be one solely for the purchase of warrants, because it calls our attention to another portion of the by-laws which reserves to the directors the power ''to purchase or otherwise acquire for the company any property rights or privileges which the company is authorized to acquire at such prices and on such terms as they may think fit''. But, as we have already said, we view the transaction, as did the trial court, as not one for the purchase of property so much as one for the general protection of the property and affairs of the company.

Judgment affirmed.

Shenk, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.