[Civ. No. 10123. First Appellate District, Division One.—September 8, 1937.]

MARIE BENE, Appellant, v. LA GRANDE LAUNDRY COMPANY (a Corporation), Respondent.

Joseph E. Isaacs and Alan H. Critcher for Appellant.

John J. Barrett and Frank I. Barrett for Respondent.

KNIGHT, J.—Plaintiff appeals from a judgment entered in defendant's favor pursuant to an order granting a nonsuit in an action to recover damages for the alleged breach of an oral agreement which plaintiff claims was made on behalf of defendant to give her employment.

The essential facts shown by the evidence are as follows: On April 6, 1906, while working in respondent's laundry in San Francisco, appellant's right hand and arm were caught in a mangle, and crushed so badly that amputation of the arm was necessary. Upon recovering from the effects of the operation, and on July 24, 1906, she returned to the laundry, and according to her testimony was told by the superintendent and the president of the respondent company

that if she would not sue the company on account of the injuries she had received, she would "be given a job any time" and "for life if she wanted it". At all events, she was put to work in the distributing room, folding clothes, and was paid $7 a week for her services, which was a dollar a week more than she was receiving when injured. She continued in such employment until December, 1908, at which time she quit voluntarily to be married, stating that her intended husband was opposed to her working after their marriage. At the time she quit the superintendent told her, so she testified, that any time she wanted to come back they "would be glad to have her". Twenty-four years later, that is, in December, 1932, her husband died, and about two months subsequent to his death she returned to the laundry and applied to the superintendent for a job, stating that owing to her impoverished financial condition she was much in need of work. He replied, so she testified, that he would see what could be done for her. Not hearing from him, she applied again, several times, personally and by phone, to the superintendent and also to the then president of the company, but on each occasion was told, according to her testimony, that if employment could be found for her she would be notified. Finally, in 1933, she commenced this action for damages. Her requests for reemployment were always based upon the plea that due to her stringent financial circumstances she was much in need of a job. At no time did she mention the matter of the alleged oral promise upon which her action is founded.

Among the points urged by respondent in support of the trial court's ruling granting the nonsuit are: First, that appellant's testimony relating to the making of the promise to give her life employment is so inherently improbable that it is legally insufficient to establish the existence of such a promise; second, that even assuming that the promise was made as claimed by her, it was not binding on the respondent corporation for want of legal authority on the part of the superintendent and the president to make such a promise; third, that said promise, if made, was invalid for want of consideration, it being contended in this regard that no cause of action for damages against respondent ever arose out of the accident (which happened prior to the enactment of the Workmen's Compensation Act) because of the intervention

of the doctrines of assumed risk, contributory negligence, and negligence on the part of a fellow employee; fourth, that assuming, as claimed by appellant, that an oral agreement was made to give her life employment, no action for damages for the breach thereof can be maintained because admittedly nothing was said as to the amount of wages she was to be paid, the kind of work she was to perform, nor the conditions under which she was to work; and that such being the case, said oral agreement was entirely lacking in the necessary elements upon which to found a rule for the ascertainment of the financial loss appellant claims to have sustained by reason of the alleged breach; and fifth, that any oral agreement so made on behalf of respondent was fully performed and discharged by it, in keeping appellant in its employ until she quit voluntarily; in other words, that appellant permanently abandoned all rights under such an agreement by quitting voluntarily to be married, and that subsequently, and especially after a lapse of nearly twenty-five years, there was no obligation on the part of respondent to reemploy her.

■ It is evident that appellant's uncontradicted testimony is legally sufficient to support the conclusion that respondent's superintendent and president promised her that if she refrained from suing respondent she would be given employment for life, if she wanted it, and that her promise not to sue constituted a valuable consideration; ■ but there would seem to be much force in respondent's contention that the promise made by the company's officers was not binding on the corporation because, as pointed out by respondent, no testimony was introduced to show that either of them was ever vested with the legal authority to make such an agreement, or that said agreement was ever brought to the attention of the board of directors. (*Rasnick* v. *W. M. Ritter Lumber Co.*, 187 Ky. 523 [219 S. W. 801]; *Pedicord* v. *Elm Grove Min. Co.*, 110 W. Va. 116 [157 S. E. 89]; *Heaman* v. *E. N. Rowell Co.*, 261 N. Y. 229 [185 N. E. 83].) In the case last cited the court in considering a similar question went on to say: "Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should

remain in the corporate employ for life even under a general power 'to appoint, remove and fix the compensation of employees'. That any board of directors or other persons responsible for the management of a corporation should give such unusual power to an executive officer cannot be implied. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power actually or impliedly vested in the corporation itself, must be found to justify such a hiring.'' (Citing numerous authorities.) ▇ Nor is it at all clear that the oral agreement relied upon by appellant, which admittedly is wholly lacking in precision as to wages, working conditions and the character of work to be performed, can be made the subject of an action for damages for its breach, because it would seem that as respondent contends, no reasonable rule can be adopted for the measurement of the loss sustained by such breach. (48 L. R. A. (N. S.) note, p. 435; *Louisville & N. R. Co.* v. *Cox,* 145 Ky. 667 [141 S. W. 389]; *Ogden* v. *Philadelphia & W. C. Traction Co.,* 202 Pa. 480 [52 Atl. 9]; *Ingram-Day Lumber Co.* v. *Rodgers,* 105 Miss. 244 [62 So. 230, Ann. Cas. 1916E, 174, 48 L. R. A. (N. S.) 435].) As held in *Arentz* v. *Morse Dry Dock etc. Co.,* 249 N. Y. 439 [164 N. E. 342, 62 A. L. R. 231], an agreement to employ a person for life is so unusual that although not required to be in writing, it should at least, to be enforcible in an action for damages, be specific and definite with little or no reason for misunderstanding. In this connection it may be stated that if in December, 1908, appellant, instead of quitting her employ. ment, had been discharged, the conditions under which she was then working might have been sufficient to serve as a foundation for the fixing of a measure of damages to be applied for the breach. (*Rhoades* v. *Chesapeake & O. Ry. Co.,* 49 W. Va. 494 [39 S. E. 209, 87 Am. St. Rep. 826, 55 L. R. A. 170]; *Pierson* v. *Kingman Milling Co.,* 91 Kan. 775 [139 Pac. 394].) But that is not the situation with which we are here dealing. As stated, appellant quit her job voluntarily in 1908, and did not seek reemployment until 1933. Necessarily, therefore, the breach of which she complains did not occur until she was refused reemployment, and the damage she seeks to recover is the loss of earnings following such breach. As declared by section 3301 of the Civil Code, ''No

damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.'' Consequently, if at the time of the breach the agreement sued upon was lacking in precision as to the amount of wages appellant was then and thereafter entitled to receive, the kind of work she was then and afterwards called upon to perform, and the conditions under which she was to be employed, it is difficult to see upon what basis the court could reasonably fix a rule for the ascertainment of the amount of damages to be awarded.

■ Irrespective, however, of the soundness of the foregoing points, it is apparent that the trial court's ruling granting the nonsuit must be sustained upon the fifth ground urged by respondent. As stated in Corpus Juris, where a servant refuses to serve or voluntarily abandons the service, whether with or without justifiable cause, the contract of employment is terminated (vol. 39, pp. 78, 79). In other words, the universal rule seems to be that a servant may leave his employment of his own accord, but if he does, his connection with the service ceases and he cannot insist on reemployment. Having left the employment voluntarily, the only way he can return to it is by making a new contract with his employer, who may or may not receive him back, as he sees fit. (*Douglas* v. *Metropolitan Life Ins. Co.*, (Mo. App.) 297 S. W. 87; see, also, *Phelps* v. *Fuchs & Lang Mfg. Co.*, 82 N. J. L. 474 [81 Atl. 728].) Here the evidence shows without dispute that appellant of her own accord quit her employment to be married, and stated at that time that she did not intend to work after her marriage, that the man she was to marry was opposed to her so doing. Consequently, having thus permanently quit her position, she abandoned all right to future employment under the alleged oral agreement; and after a lapse of nearly twenty-five years, there was no obligation on the part of respondent to reemploy her.

■ Appellant contends that the termination of her employment in the manner stated amounted to no more than taking a leave of absence with her employer's consent. But the evidence does not support such contention. Nowhere in the testimony is there a suggestion of a leave of absence. To the contrary, appellant repeatedly stated that she quit.

■ But even though the circumstances of her leaving be

construed as the taking of a leave of absence, she was required, nevertheless, in order to retain her rights under said agreement, to return to her employment within a reasonable time; and it cannot be successfully maintained that a period of twenty-four or twenty-five years was a reasonable time.

Upon the ground stated, the judgment in our opinion should be affirmed; and it is so ordered.

Tyler, P. J., and Cashin, J., concurred.