[Sac. No. 6588.   In Bank.   Nov. 29, 1955.]

MEMORIAL HOSPITAL ASSOCIATION OF STANIS-
LAUS COUNTY (a Nonprofit Corporation), Respondent,
v. PACIFIC GRAPE PRODUCTS COMPANY (a Cor-
poration), Appellant.

Nathan B. McVay and C. O. Thrasher, Jr., for Appellant.

Vernon F. Gant and Leo J. Biegenzahn for Respondent.

SPENCE, J.—Defendant company appeals from a judgment holding it liable on a subscription pledge for the building of a hospital. ▇ As ground for reversal, it contends that the evidence is insufficient to sustain the judgment. In deciding this question, the power of the appellate court is limited to the determination of whether there is any evidence, contradicted or uncontradicted, which will support the judgment rendered, and all reasonable inferences must be indulged to uphold it, if possible. (4 Cal.Jur.2d, § 606, p. 485; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]; *Holmberg* v. *Marsden,* 39 Cal.2d 592, 596 [248 P.2d 417].) In the light of this time-honored rule, we have concluded that appellant's contention cannot be sustained.

Respondent, a nonprofit hospital association, was engaged for some time prior to November 12, 1947, in the solicitation of pledges of funds for the construction of a general hospital near Modesto, California. Considerable publicity was given to the campaign. Solicitors on respondent's behalf called

three times upon appellant, an industrial corporation located in that area. On the first visit, respondent's solicitors were informed by S. F. Triplett, appellant's president and general manager, that he would have to take up the matter with the board of directors. On the second visit, Triplett told them that he had not had an opportunity to discuss it with the board and they would have to return. Their third and final visit was made on November 12, 1947, when they received a written pledge for $5,000, bearing the name of Pacific Grape Products Company as donor and signed by Triplett. At the trial one of respondent's solicitors related the circumstances of the third visit. He stated that they did not see Triplett at that time but that one of appellant's employees simply delivered the pledge card to them signed as above indicated.

Appellant is a canning company which buys, processes and sells canned goods. Triplett was its president and general manager since its inception in 1926; he owned 73 per cent of its outstanding shares of stock; and the general conduct of the business, including "general supervision of the departments, the operation of the factory, in the field and in the sales," was placed in his hands. The board of directors met at infrequent intervals, and ordinarily only at his call. For many years Triplett, without specific authorization from the board, had made contributions on behalf of appellant to the Red Cross and Community Chest. Triplett testified that the donations were made on a "history basis," each year being "about the same amount," and that probably when the practice of making the donations first started, he approved and authorized such procedure.

While it appears that appellant's assistant secretary and one or two others of the directors had some knowledge of the solicited pledge, it is not clear that the matter was ever discussed at a board meeting. It is argued that such discussion might be inferred, with resulting approval, in view of the testimony by respondent's solicitors that Triplett on their first two visits had stated that he would have to take up the matter with the board and then on the third visit, the pledge card was delivered to them without further comment. (Wigmore on Evidence, 3d ed. 1940, vol. VI, § 1725, p. 79; 19 Cal.L.Rev. 231, 367; see also *Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11, 15 [206 P.2d 847, 9 A.L.R.2d 1297].) It is conceded, however, that Triplett had no specific authority, by virtue of any formal board resolution, to enter into this particular subscription agreement.

The trial court found that Triplett signed the subscription

agreement as appellant's "president and general manager and not in his individual capacity"; that at that time he "owned approximately 73%" of the stock and "had and exercised almost complete control" over appellant's affairs; that as "president and general manager," he had "full power and authority to bind" the corporation and the "subscription agreement was and is a valid, binding and sustaining obligation" upon it. Accordingly, respondent recovered judgment on the pledge against appellant corporation, but Triplett was exonerated from liability. The reasonableness of the pledge is not questioned, but only Triplett's authority to bind appellant.

The general rule is well stated in *Magnavox Co.* v. *Jones*, 105 Cal.App. 98, at page 103 [286 P. 1084], as follows: "To properly prove a contract claimed to be binding on the corporation, it should be shown that it was made on its behalf by someone who had authority to act for it. It must be shown that the officer was expressly authorized, or that the act was fairly within the implied powers incidental to his office, or that the corporation is estopped to deny his authority by reason of having accepted the benefit of the contract or otherwise."

While, as above indicated, there was no showing that Triplett was specifically authorized to bind appellant on this particular pledge agreement, respondent properly contends that the evidence was sufficient to show that the agreement was executed by Triplett pursuant to his implied authority.

Where the president of a corporation is also its general manager, having the power to superintend and conduct its business, he has implied authority to make any contract or do any other act appropriate in the ordinary course of its business. In such case, his powers are greater than he would have as president alone. (19 C.J.S., § 1001, p. 466; Fletcher Cyc. Corps. [Perm. ed. 1931], vol. 2, §§ 553, 594.)

The case of *Freeman* v. *River Farms Co.*, 5 Cal.2d 431 [55 P.2d 199], is closely in point. There the defendant corporation was held liable on an agreement, made by its president on its behalf, to cash certain warrants issued by a levee district. Contractors had relied upon this method of financing when doing repair work on land adjoining defendant corporation's property. The end sought to be accomplished by the president was the protection of the corporation's farming property from damage by flood waters. His act in agreeing that the corporation would cash the warrants issued by

the levee district was unquestionably beneficial to the corporation. It was an undertaking coming within reasonable limits of his general authority in the active management of the corporation's business, and it was therefore held to be an act binding on the corporation though it was not "absolutely necessary" nor the "usual" type of procedure followed by the corporation. (*Freeman* v. *River Farms Co., supra,* 5 Cal.2d 431, 435-436.)

Stronger reasons appear here for holding appellant liable on the subscription pledge signed by Triplett, who was not only appellant's president and general manager, but also the owner of 73 per cent of its stock and the person exercising complete control in the conduct of its business. ■ It is a matter of common knowledge that the trend on the part of the prosperous business concern is steadily in the direction of making substantial charitable contributions in the community in which it is located and does business. ■ Such donations are generally considered for its benefit as a means of increasing goodwill and promoting patronage. Accordingly, appellant's president on its behalf had for many years, without specific authority, contributed to Red Cross and Community Chest campaigns, consistent with the purpose of demonstrating the corporation's interest in helping worthy community endeavors. The same basic consideration operates in the present case, where respondent, a nonprofit hospital association, was seeking funds to construct a large general hospital in the community and was relying on the combined assistance of the residents and business concerns in that area to finance the project. Furthermore, appellant, operating its industrial plant in the community, would be directly benefited by having such a hospital capable of furnishing needed hospital services to its employees, and it was to its advantage to promote such project. This added factor has a bearing on the determination of the reasonableness of the particular subscription pledge and, therefore, of Triplett's implied authority to make it. While the pledge was considerably more than perhaps the few hundred dollars which Triplett had ordinarily subscribed each year in appellant's behalf to the Red Cross and Community Chest campaigns, such campaigns were annual and regular events. On the other hand, respondent's solicitation was for one large building project, a nonprofit general hospital; and a $5,000 pledge in aid of such an undertaking does not appear unreasonable in view of the benefits, direct and indirect, to appellant.

Appellant analogizes this pledge agreement to a contract

for life employment made by the president and superintendent of a corporation. Such an "unusual and uncommon" transaction was condemned in *Bene* v. *La Grande Laundry Co.*, 22 Cal.App.2d 512, at page 515 [71 P.2d 351], as being "unreasonable and unauthorized." But the present situation appears more closely akin to that of an ordinary contract of employment made by a corporation's president and manager, as the recognized business head of the corporation, entrusted with power to execute contracts and to bind the corporation in furtherance of the corporate interests. (*Grummet* v. *Fresno Glazed Cement Pipe Co.*, 181 Cal. 509, 513 [185 P. 388]; see also Fletcher Cyc. Corps. [Perm. ed. 1931], vol. 2, § 597.)

Contrary to appellant's suggestion, the conclusion that the pledge agreement is binding on appellant does not undermine the principle of protection afforded to stockholders by the corporate structure, in that a philanthropically inclined president and general manager, without specific authority of the directors, might thereby bankrupt the corporation by making large pledges to worthy charitable enterprises. As with the execution of any act purportedly within the implied power of a corporation's president and general manager, there is a reasonable limit to his authority, and whether or not he has exceeded such limit will depend on the particular facts and circumstances in each case. Triplett, as president and general manager of appellant corporation and holder of almost three-fourths of its stock, was admittedly exercising practically complete control over appellant's corporate affairs. His execution of the pledge agreement to respondent would seem to come within his implied power as the business head of appellant in the conduct of its affairs; and while it may not have been a "usual" or "absolutely necessary" act, it appears to have been executed by Triplett as a reasonable means of benefiting the corporation and promoting its business interests. Under the circumstances, we conclude that there is ample evidence in the record to sustain the trial court's finding that at the time Triplett signed the pledge agreement, he had "full power and authority to bind" appellant, and that the subscription agreement was a valid obligation of appellant.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.