[Civ. No. 11091. Third Dist. July 5, 1966.]

JOHN EDWARD MANNION, Plaintiff and Respondent, v. CAMPBELL SOUP COMPANY, Defendant and Appellant.

Rowland, Paras & Clowdus and Gloyd T. Clowdus for Defendant and Appellant.

Wilke, Fleury & Sapunor, Wilke, Fleury, Sapunor & Hoffelt and Joe S. Gray for Plaintiff and Respondent.

FRIEDMAN, J.—Plaintiff Mannion, a doctor of medicine, sues Campbell Soup Company for breach of an oral contract of employment as medical director at Campbell's Sacramento plant. The company had been represented by Blaine Ebert, personnel manager of the Sacramento plant, in fashioning the oral arrangement in suit. The trial court rejected the company's contention that Dr. Mannion had been employed on a month-to-month basis, terminable at will, and found (as Dr. Mannion testified) that he had an oral contract to continue as plant medical director so long as he could physically perform the work. The company appeals from a judgment awarding Dr. Mannion $38,700 damages for a groundless discharge.

Plaintiff had the burden of proving agency of suffi-

cient scope, actual or ostensible, to charge the company with the acts of its personnel manager. (*Original M. & M. Co. v. San Joaquin etc. Corp.*, 220 Cal. 152, 162-163 [30 P.2d 47]; *J. M. Wildman, Inc. v. Stults*, 176 Cal.App.2d 670, 674 [1 Cal. Rptr. 651]; *Aspen Pictures, Inc. v. Oceanic S.S. Co.*, 148 Cal.App.2d 238, 253 [306 P.2d 933].) The company asserts absence of substantial evidence of the personnel manager's authority. ▮ The power of the appellate court begins and ends when it discovers substantial evidence, contradicted or uncontradicted, to support a finding of sufficient authority on the agent's part. (*Lipka v. Lipka*, 60 Cal.2d 472, 475 [35 Cal.Rptr. 71, 386 P.2d 671]; *DeAngeles v. Roos Bros., Inc.*, *(Cal.App.), 51 Cal.Rptr. 638.) Viewing the evidence in the light most favorable to plaintiff, we find no substantial evidence that Ebert had actual or ostensible authority to make the oral contract found to exist by the trial court, that is, one binding the company to continue plaintiff in its employ as long as he was physically able to perform. Thus the judgment must be reversed and judgment entered for the company.

Dr. Mannion entered Campbell's employ in 1953 on a full-time basis and at a monthly salary. In 1959, when he was approaching the "normal" retirement age of 65, he entered into discussions with Mr. Ebert, the personnel manager, for extending his employment until he reached the "mandatory" retirement age of 67. With the approval of the Camden, New Jersey, headquarters of the firm, the extension arrangement was concluded. In June 1960 Dr. Mannion and the firm entered into a further arrangement. At this point too Dr. Mannion's negotiations were conducted with Mr. Ebert. The new arrangement became effective July 1, 1960. Under its terms Dr. Mannion would draw monthly retirement payments of $86 but continue as medical director on a part-time basis. He undertook to work at a salary of $625 per month, half his then current salary; to put in 20 hours per week as plant medical director, half his then current work week; to accomplish during the abbreviated work week all the medical and administrative tasks he had previously performed; to remain on call for industrial accidents (or provide substitute medical services) at all times. The company waived its prevailing rule requiring mandatory retirement at age 67.

Soon after inception of the new arrangement, Mr. Ebert

*Reporter's Note: A hearing was granted by the Supreme Court on July 21, 1966, and the cause was remanded to the District Court of Appeal which rendered a further opinion on August 23, 1966, reported in 244 Cal.App.2d —— [52 Cal.Rptr. 783].

moved elsewhere. Strained relations developed between his successor and Dr. Mannion. The doctor wrote a letter of complaint to the company's medical director at the Camden headquarters. His employment was terminated at the end of February 1962, and he then filed the present damage action.

■ When an employment contract fixes no duration, the term of employment extends for such period as the parties fix for the computation of salary. (Lab. Code, § 3001; *Standing* v. *Morosco*, 43 Cal.App. 244, 247 [184 P. 954].) ■ In the absence of a contract binding the parties to a greater duration, a person on a monthly salary is hired on a month-to-month basis, and his employment is terminable at the will of either party on notice to the other. (Lab. Code, § 2922; *Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 553 [36 Cal.Rptr. 880]; see also *Ruinello* v. *Murray*, 36 Cal.2d 687, 689-690 [227 P.2d 251].) Dr. Mannion and the firm have differing versions as to the duration feature of the oral, part-time employment arrangement of June 1960. ■ Dr. Mannion testified (and the trial court impliedly found) that Ebert, representing the company, promised to retain him so long as he was physically able to perform the work. Such an agreement, it may be assumed, would permit his earlier discharge only for cause, that is, for a prior breach of contract on his part (see Note, 7 A.L.R.3d 898).

■ The company was bound if Ebert, its agent, had either actual or ostensible authority to enter into such a contract on its behalf. ■ ■ Actual authority stems from conduct of the principal which causes the agent reasonably to believe that the principal has consented to the agent's act; ostensible authority, from conduct of the principal which leads the third party reasonably to believe that the agent is authorized to bind the principal. (Civ. Code, §§ 2300, 2315, 2316, 2317; *Tomerlin* v. *Canadian Indem. Co.*, 61 Cal.2d 638, 643 [39 Cal.Rptr. 731, 394 P.2d 571]; *South Sacramento Drayage Co.* v. *Campbell Soup Co.*, 220 Cal.App.2d 851, 856 [34 Cal.Rptr. 137].) ■ No specific finding on the subject of Ebert's agency was necessary. The fact of agency is implicit in the general finding of ultimate fact that Campbell Soup Company entered into an oral contract of employment. (*Pfaff* v. *Fair-Hipsley, Inc.*, 232 Cal.App.2d 274, 279 [42 Cal.Rptr. 624]; *Hahn* v. *Hahn*, 123 Cal.App.2d 97, 102 [266 P.2d 519].) ■ Defendant's contention on appeal that the agent lacked authority to make the oral contract constitutes a challenge to the sufficiency of the evidence. (*Tomerlin* v. *Canadian Indem. Co., supra,* 61 Cal.2d at p. 643.) Thus the question is whether

there is substantial evidence, contradicted or not, of Ebert's actual or ostensible authority to bind the company to the contract found by the court.

All Dr. Mannion's dealings were conducted with the personnel manager of the Sacramento plant. Both at the inception of Dr. Mannion's employment and before each change of status, discussions and proposals were initiated in Sacramento, but each arrangement was submitted to the Camden headquarters for approval. The personnel manager of the Sacramento plant was the immediate superior of the plant medical director. The personnel manager in turn was responsible to the plant manager. Certain personnel decisions could be made locally; others had to be authorized by company officials at Camden. A company manual permitted managers of certain plants, including Sacramento, to hire or authorize changes of status of those salaried employees drawing up to $1,000 per month. Immediately prior to the inception of the half-time arrangement, Dr. Mannion was receiving $1,250 per month.

Dr. Mannion testified that he had suggested the half-time arrangement to Ebert, the personnel manager, who said he would check with others. Dr. Mannion was unable to recall with whom Ebert was going to discuss the proposal. On the next occasion, he testified, Ebert told him that the arrangement was confirmed and he would be a contract surgeon ''as long as you are able to work.'' Later Ebert showed him a memorandum describing the oral arrangement, which would be sent to the company ''to establish this present status of your position.'' Dr. Mannion testified that Ebert had never claimed authority to act without approval of company headquarters. He testified that the memorandum which Ebert displayed to him failed in two ways to express his personal understanding of the oral arrangement. First, it had a paragraph at the end, as he recalled it, that the employment ''could be terminated by either party.'' Secondly, the paper did not state that he could work as long as he wanted or as long as he was able to perform the work. Notwithstanding these supposed misstatements or omissions in Ebert's memorandum to headquarters, Dr. Mannion described no overt objection or argument on his part.

Ebert, no longer in Campbell's employ at the time of trial, was called by plaintiff as an adverse witness. Characterization of some of his testimony is difficult because his examination was accompanied by several misunderstandings as to the precise subject of inquiry. At no time, however, did he profess any authority on his part or on the part of the local plant

manager to contract for Dr. Mannion's services or to make
changes in his status without prior approval of company offi-
cials at Camden. To the contrary, he disclaimed such author-
ity. Dr. Mannion's suggestion for half-time employment was
the subject of discussions with company officials at Camden.
On June 2, 1960, Ebert prepared and signed a ''strictly con-
fidential'' memorandum addressed to Mr. Edwin J. Foltz,
vice president of the firm at the Camden headquarters, describ-
ing the arrangement as he viewed it.[1] Ebert testified that he
showed this memorandum to Dr. Mannion, who read it. He
then attached the memorandum to a company form entitled
''Change of Status Authorization.'' The two documents were
then signed or initialed by Mr. Crowley, the plant manager,
who transmitted them to Camden, where they received the
written approval of the company's general medical director,
two vice presidents and the president of the corporation. Ebert
testified that the arrangement described in the June 2 memo-
randum ''necessitated further approval.'' He stated: ''I had
no authority to make any arrangements of this nature.''

The last paragraph of the June 2 memorandum (fn. 1,
*supra*) recites that the arrangement would ''continue until
such time as either party chooses to modify it.'' The recita-
tion is indicative of termination at the choice or will of either
party. As a demonstration of the kind of oral employment
arrangement actually authorized by the company's Camden

---

[1]The body of the memorandum reads as follows: ''1. In accordance
with discussions held with you, Dr. Kimmich, and Mr. Crowley, employ-
ment arrangements have been voluntarily agreed upon between Dr. Man-
nion and the writer. This agreement covers Dr. Mannion's status effective
July 1, 1960, and provides for the following: a. Dr. Mannion will change
his status to a part-time twenty-hour per week, salaried employee. b. Dr.
Mannion's future salary under these arrangements will be one-half his
present salary. c. All of the benefits and privileges that accrue to part-
time employees will be extended to Dr. Mannion. d. We will set up hours
of coverage to best serve the Sacramento Plant, and these hours will be
posted regularly so that all employees will know of the Doctor's hours.
e. We are adding to the panel of doctors available during Dr. Mannion's
absence. His son and his son's wife, both of whom are doctors of medi-
cine and both of whom have had extensive post-medical training, will
substitute (along with others) for Dr. Mannion during periods of time
when he is absent. f. When other doctors are substituting for Dr. Man-
nion, he will compensate them from his salary except in instances where
the Company policy provides otherwise.

''2. Dr. Mannion will continue to be responsible for the direction of
the medical program at the Sacramento Plant and the Pacific Mushroom
Farm. This change in no way alters these responsibilities and working
relationships.

''3. Dr. Mannion is very pleased with these arrangements, and it is
expected that it will continue until such time as either party chooses to
modify it.''

officials, this recitation stands uncontradicted. The memorandum is quite consistent with Ebert's testimony describing the absence of local autonomy covering the oral arrangement in suit. Plaintiff has produced no evidence of such autonomy. Although the appellate court will draw all possible inferences in support of the findings, there is no evidence to support an inference that the company actually authorized or led Ebert, its agent, to believe it had authorized an oral contract to employ Dr. Mannion as long as he had physical ability to perform.

On the score of ostensible authority, counsel for Dr. Mannion contend that Campbell Soup Company so conducted its Sacramento personnel office as to justify a reasonable belief in the personnel manager's power to bind the company. Particular emphasis is placed upon the personnel manager's status as Dr. Mannion's immediate superior in the company hierarchy. The agreement upon which recovery depends requires a scope of authority commensurate with its character. The question is not one of the local officials' authority to hire or fire, to fix salary and working hours. The question is one of duration, of a claimed authority to bind the company to the employee as long as the latter retained physical capacity to perform. Such a contract diverges sharply from standard employment practices. It is comparable in many ways to a lifetime contract. A culling of the transcript fails to reveal any evidence that Dr. Mannion actually believed, reasonably or otherwise, that Ebert had authority to endow him with the near-lifetime tenure he now claims. When a corporation clothes its officials with apparent authority to hire, it does not impliedly authorize such extraordinary contracts. " 'Plain language of the managing board, clearly showing that such was the intention of the corporation . . . must be found to justify such a hiring.' " (*Bene* v. *La Grande Laundry Co.*, 22 Cal.App.2d 512, 515-516, quoting (at p. 516 [71 P.2d 351]) from *Heaman* v. *E. N. Rowell Co.*, 261 N.Y. 229 [185 N.E. 83]; *Lee* v. *Jenkins Bros.*, 268 F.2d 357, 367; *Kolodney* v. *Kolodney Bros., Inc.*, 21 Conn. Supp. 308 [154 A.2d 531, 533]; *Lewis* v. *Minnesota Mut. Life Ins. Co.*, 240 Iowa 1249 [37 N.W.2d 316, 327]; *Savarese* v. *Pyrene Mfg. Co.*, 9 N.J. 595 [89 A.2d 237, 241]; *Goldenberg* v. *Bartell Broadcasting Corp.*, 47 Misc.2d 105 [262 N.Y.S.2d 274, 279]; cf. *Farmer* v. *Arabian American Oil Co.*, 277 F.2d 46, 51-52.) There is no evidence that Campbell Soup Company's actions endowed the local personnel manager with ostensible authority to create an employment contract of the duration found by the trial court.

We have not overlooked Dr. Mannion's testimony that Ebert told him he could work as a ''contract surgeon'' as long as he was able to work. On appeal we must assume the truth of this testimony. It describes no conduct of Campbell Soup Company, the principal, thus supporting no inference of actual or ostensible authority to bind the company. (*Tomerlin* v. *Canadian Indem. Co., supra*, 61 Cal.2d at p. 643.)

Because the evidence fails to establish a binding contract, it is unnecessary to consider other issues such as adequacy of consideration and application of the statute of frauds.

The judgment is reversed and the cause remanded with directions to enter judgment for defendant.

Pierce, P. J., and White, J. pro tem.,* concurred.

A petition for a rehearing was denied July 25, 1966, and respondent's petition for a hearing by the Supreme Court was denied August 31, 1966.

*Assigned by the Chairman of the Judicial Council.