STATE HIGHWAY DEPARTMENT OF NEW JERSEY, AP-
PELLANT, v. CIVIL SERVICE COMMISSION OF THE
DEPARTMENT OF CIVIL SERVICE OF THE STATE OF
NEW JERSEY AND CHARLES W. KENYON, RESPOND-
ENTS.

Argued June 5, 1961—Decided June 30, 1961.

*Mr. Theodore I. Botter,* Deputy Attorney General, argued the cause for appellant (*Mr. David D. Furman,* Attorney General, attorney; *Mr. Murray Brochin,* Deputy Attorney General, on the brief).

*Mr. Max A. Boxer* argued the cause for respondent Charles W. Kenyon.

The opinion of the court was delivered by

HANEMAN, J.  This appeal involves the right of Charles W. Kenyon (Kenyon) to be reinstated as an Assistant Engineer in the New Jersey Highway Department (Highway Department) under *N. J. S. A.* 38:23–4 upon his separation from military service.  The Civil Service Commission of the Department of Civil Service of the State of New Jersey

(Civil Service Commission) upon appeal from a determination of the Highway Department that Kenyon was not entitled to that position reversed the action of the Highway Department and directed his reinstatement. Plaintiff appealed to the Appellate Division and this court certified upon its own motion pending argument in the Appellate Division.

Kenyon entered the temporary employ of the Highway Department on August 14, 1929 as a Highway Inspector at a salary of $1,860 *per annum*. On February 15, 1930 he was regularly appointed to that position and continued in the Highway Department until July 2, 1940, when he was ordered, with his consent, to active military duty as a reserve army officer until January 1, 1941. Having obtained a military leave of absence from the Highway Department for that period, he undertook such active service. His initial period of service was, by orders, extended to October 30, 1942 and his leave of absence continued for the duration of his military service. Before the latter date the United States entered World War II and he was retained on active service, presumably in accordance with general orders. In 1944, as a result of a reclassification program, his title in the Highway Department was reclassified as Assistant Engineer, Highway. His military service was continued in the manner hereafter set forth until December 31, 1958, when he was retired as a Colonel, at his request.

Although it is admitted that he continued on active duty status from July 2, 1940 to December 31, 1958, the record does not disclose a complete chronological record of the manner in which such service was ordered. The following was shown by the exhibits and by the testimony of Kenyon.

On January 1, 1947 Kenyon, while on duty in China, was required by the Army to fill in a questionnaire which reads as follows:

"*CATEGORY I*    I elect to continue on extended active duty for an unlimited length of time.

*CATEGORY II*   I elect to continue on extended active duty until 30 June 1947.

*CATEGORY III*   I elect to continue on extended active duty until 31 December 1946.

*CATEGORY IV.*   I elect to continue on extended active duty until 30 November 1946.

*CATEGORY V.*   I desire to be relieved from active duty at the earliest opportunity. .

2. WD Circular 220, dated 23 July 1946, amends WD Circular 366 1945 by adding the following categories:

*CATEGORY VI.*   I elect to continue on extended active duty for a period of 12 months beginning ......... and ending ..........

*CATEGORY VII.*   I elect to continue on extended active duty for a period of 18 months beginning ......... and ending ..........

*CATEGORY VIII.*   I elect to continue on extended active duty for a period of 24 months beginning ......... and ending .........."

Kenyon elected Category I which, as noted, provided for extended active duty for an unlimited length of time. He had no recollection or record of the action taken on this request. In any event, he was continued on active duty.

On March 18, 1948 the Highway Department wrote Kenyon, as follows:

"This office will appreciate your advising of your present military status and the probable date of your return to this Department."

He replied:

"My present status with respect to the U. S. Army is that of a reserve officer on extended active duty. The date of return is dependent on the world situation. Under favorable conditions, I hope to return to the Highway Department in the early spring of 1949."

In January 1951 he again applied to the Army for an extension of his active duty. He testified that he did not know whether he would have been continued in military service after that date had he not made the request for continuance but that he believed, absent such an application,

he "probably would have been released from the Army." The application was approved and pursuant to such approval his service time was extended to July 31, 1954.

On March 16, 1954 the Highway Department wrote Kenyon:

"We would appreciate hearing from you as to your present military status and the probable date that you will return to your position. The records also show that you have stated from time to time that you anticipated return to this department within a short time."

He replied:

"At present I am assigned to the Construction Division of the G4 Section, Headquarters Army Forces Far East. I have recently been informed by the Department of the Army that my services would probably be required until July 1957. The present situation is possibly the reason for the Department of the Army policy."

On September 12, 1955 the Highway Department wrote Kenyon:

"In reviewing the status of employees of the State Highway Department on military leave of absence, it is noted that you entered the active military service on July 8, 1940. Further, we have not been kept informed concerning your exact military status. Since it has been approximately 15 years, 2 months, that you have been on military leave of absence, we would appreciate your advising this office of your full and complete military status including information as to whether or not you have accepted a commission in the regular Army, and whether or not it is your intention to return to your position in the State Highway Department. If so, what would be the probable date of this return."

He replied:

"My status in the Army is that of a Reserve Officer on extended active duty. I have not been commissioned in the Regular Army. I do intend to return to my position in the State Highway Department just as soon as I am released from active duty in the Army. At present I do not have a firm date for my release, but I shall forward this information just as soon as it is made available to me."

Kenyon further testified that he again had no recollection of how he was kept on active military service until August 29, 1956. However, on that date he requested a further extension of his active duty status and this request was approved. This latter extension approval provided that the officer could be relieved from active duty by voluntary request.

On January 11, 1958 Kenyon wrote to the Highway Department:

"During the past several years I have had several inquiries from the New Jersey State Highway Department regarding the date I would be released from the Army, and return to my position in the Highway Department. Lack of firm information has prevented me from making a definite reply, until I recently was informed that I would be released from the Army 31 January 1959."

As above noted, he was, on his own request, relieved of active duty on December 31, 1958.

Plaintiff based its case before the Civil Service Commission upon the theory that Kenyon had abandoned his position with the State Highway Department by voluntarily remaining in military service when he could have returned to civilian life and his State position and therefore did not come within the confines of *N. J. S. A.* 38:23-4. Although plaintiff now raises several questions not raised on the trial before the Civil Service Commission, we shall limit our consideration to the question of abandonment.

This is a case of novel impression. See *Salz v. State House Commission*, 32 *N. J. Super.* 230 (*App. Div.* 1954), affirmed 18 *N. J.* 106 (1955).

*N. J. S. A.* 38:23-4, under which Kenyon seeks reinstatement to his position as Assistant Engineer, provides in pertinent part:

"Every person holding office, position or employment, other than for a fixed term or period, under the government of this State * * * or of any board, body, agency or commission of this State * * * who after July first, one thousand nine hundred and forty, has entered, or hereafter shall enter, the active military or naval service of the United States or of this State, in time of

war or an emergency, or for or during any period of training, or pursuant to or in connection with the operation of any system of selective service, \* \* \* shall be granted leave of absence for the period of such service and for a further period of three months after receiving his discharge from such service. \* \* \*

In no case shall such person be discharged or separated from his office, position or employment during such period of leave of absence because of his entry into such service. During the period of such leave of absence such person shall be entitled to all the rights, privileges and benefits that he would have had or acquired if he had actually served in such office, position or employment during such period of leave of absence except, unless otherwise provided by law, the right to compensation. \* \* \* Upon resumption of his office, position or employment, the service in such office, position or employment of the person temporarily filling the same shall immediately cease."

The statute was indubitably enacted for the highly proper and beneficent purpose of protecting the employment status of a public employee while he was discharging his citizen's duty to the nation in a time of war or emergency. See *Kobylarz v. Mercer*, 130 *N. J. L.* 44 (*E. & A.* 1942).

World War II with Germany officially terminated in 1951 by Presidential Proclamation No. 2950 on October 19, 1951, 50 U. S. C. A. Appendix preceding section 1, 16 *Fed. Reg.* 10915 (1951) and with Japan on April 28, 1952 by Presidential Proclamation No. 2974, 50 U. S. C. A. Appendix preceding section 1, 17 *Fed. Reg.* 3813 (1952). Kenyon was therefore not protected by a state of war subsequent to April 28, 1952. In the interim between his original entry into military service and April 28, 1952, a "national emergency" arising out of the Korean situation was declared by the President on December 16, 1950, Presidential Proclamation No. 2914, 50 U. S. C. A. Appendix preceding section 1, 15 *Fed. Reg.* 9029 (1950). Although actual hostilities have ceased in Korea, no official proclamation ever terminated that "national emergency."

██ The purpose of the statute as above noted is to protect a State employee while serving the nation in time of war or an emergency, whether such service was originally undertaken voluntarily or involuntarily. While it is recog-

nized that it is the citizen's duty to serve his Nation in time of national need, it is as well the duty of such a citizen who is a State employee to resume the discharge of the duties of the State position, for the public good, as soon as his services are no longer absolutely required by the military. It follows that absence from State service due to presence in the military service may constitute an abandonment of the former when he voluntarily continues it beyond the time when he can have his release from the Armed Services.

In *Vanderbach v. Hudson County Board of Taxation*, 133 *N. J. L.* 126, 128 (*E. & A.* 1945), the court said:

"The acts relied upon to show abandonment and nonuser of a public office are to be assayed in the light of the principle that such an office is a public trust which imposed upon the incumbent the performance of certain duties for the common good. It is requisite that the abandonment be intentional, although that intention may be inferred from the officer's conduct and overt acts."

The question of intention is always a question of fact depending upon the particular facts and circumstances of a case. A given intent may be found even though a party orally deny its existence. See *Phelps v. Fuchs & Lang Mfg. Co.*, 82 *N. J. L.* 474 (*E. & A.* 1911).

Kenyon's protestations of a desire to return to civilian life are inconsistent with his actions. For approximately 18½ years he continued in the military service and terminated that relationship only when he was eligible for a military pension. He refused on at least three occasions, *i. e.*, 1947, 1951, 1956, to end his military career and resume his civilian career when such a choice was open to him. His continued service in the Army was then voluntarily pursued and not mandatorily required by the military. Kenyon abandoned his State employment and is not entitled to reinstatement under *N. J. S. A.* 38:23–4.

Kenyon argues that the Highway Department never insisted that he sever his military connection and return to State employment and lulled him into the false belief that

his old position would be available regardless of when he returned to civilian life. The record does not sustain the conclusion that he was misled. The Highway Department had no duty to make such a demand. The duty to return to civilian life at the earliest opportunity, unless he desired to abandon State employment, was Kenyon's, regardless of any specific direction to that end from the Highway Department. The correspondence demonstrates that the Highway Department was seeking definite information as to when Kenyon's military service would be terminated in order that he could return to State employment, a subject upon which it had no knowledge, and something less than complete frankness in Kenyon's replies as to his actual status.

Kenyon further argues that the refusal by the Highway Department to reinstate him amounted to a removal from office without a hearing and hence violated his rights as a veteran under *N. J. S. A.* 38:16-1 and as a Civil Service employee under *N. J. S. A.* 11:1-1. The answer to this contention is simply that he was not removed from a State position by action of the employing unit but rather that he abandoned that position by his own action. The cited statutes are inapplicable.

Reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.