**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1445-18T1

IN THE MATTER OF DR.
ALLISON KELLISH,
UNION COUNTY COLLEGE.

_____

Argued September 16, 2019 – Decided October 9, 2019

Before Judges Messano and Vernoia.

On appeal from the Board of Trustees, Union County College.

Maurice W. McLaughlin argued the cause for appellant Allison Kellish (McLaughlin & Nardi, LLC, attorneys; Pauline M.K. Young and Maurice W. McLaughlin, on the briefs).

Matthew Joseph Giacobbe argued the cause for respondent Union County College (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Matthew Joseph Giacobbe, of counsel and on the brief).

PER CURIAM

Dr. Allison Kellish was a full-time tenured professor at Union County

College (UCC), when, in May 2017, UCC's Board of Trustees (the Board)

brought tenure charges seeking Kellish's dismissal for conduct unbecoming and

other just cause. N.J.S.A. 18A:6-18. UCC alleged Kellish engaged in fraudulent conduct by "failing to disclose and request approval" of outside employment, including a full-time position at Seton Hall University (SHU), and by engaging in outside employment while at the same time advising UCC she was temporarily disabled from all employment for medical reasons. The matter was forwarded to the Office of Administrative Law as a contested case, see ibid., after which UCC moved for, and Kellish cross-moved for, summary decision.

The record before the Administrative Law Judge (ALJ) revealed that Kellish, a licensed physical therapist with a doctorate in Philosophy in Health Sciences, began working at UCC in 2000 and maintained outside employment throughout her career at the college. From 2010 to 2015, she was also an assistant clinical professor in the physical therapy department at SHU. During her employment at UCC, Kellish was a member of the professors' collective bargaining unit and subject to a collective negotiations agreement (CNA).

The CNA ratified in June 2015, amended the requirements regarding outside employment. While the prior agreement required faculty to "notify the [p]resident, in writing of such activity, indicating employer, specific days and hours of the assignment and overall duration[,]" the new agreement required that

any employee seeking or maintaining outside employment "receive pre-approval from the [p]resident before engaging in such outside employment."

Prior to the start of the 2014–15 academic year, Kellish provided a letter to UCC's president, advising that she had been working at SHU and expected to continue working as an instructor at a two-credit lab course in SHU's physical therapy program on Thursday afternoons. On August 3, 2015, Kellish again informed the president in writing that she was working at SHU in the same position during the fall 2015 semester. Under the 2015 CNA, the president was required to render a decision "in writing within two (2) weeks," but Kellish received no response.

By letter dated July 29, 2015, however, SHU had dramatically expanded Kellish's responsibilities, elevating her to the position of Director of Clinical Education for its physical therapy department. SHU appointed Kellish to a "full-time" three-year term, at an annual salary of $103,000. Despite this promotion, on August 11, 2016, Kellish again advised the UCC president that she was engaging in outside employment with SHU, teaching a two-credit course during fall 2016 on Thursdays and "assisting in clinical oversight on Wednesday and Friday either in the afternoon or evenings."

3

In early 2017, Kellish underwent shoulder surgery, and, on January 18, she notified UCC that she would be out of work during the post-surgery recovery period. A few days later, she supplied UCC with a doctor's note indicating Kellish could perform "[n]o [w]ork until further notice." Kellish advised UCC in March that she would continue to be "out of work" on doctor's orders, and provided another doctor's note in April, indicating Kellish could "[r]eturn to [f]ull [d]uty" on June 1, 2017.

Kellish attempted to use her accumulated sick time but asserted UCC's Human Resources Department told her she had to apply for temporary disability benefits. Kellish never requested UCC provide her with an accommodation in her workplace during this period of post-surgical recuperation, nor did UCC offer her one. However, it is undisputed that the notes from Kellish's doctor indicated she was unable to perform any work at all. Kellish applied for, and received, short-term disability benefits. On her application, Kellish represented that she last worked on January 11, 2017, and failed to disclose any source of "other income." In addition to receiving disability payments, UCC paid Kellish sick leave and supplemental pay.

Unbeknownst to UCC, Kellish continued to work at SHU during spring 2017 and also presented a lecture before the New Jersey American Physical

A-1445-18T1

Therapy Association while on disability leave. The Board, thereafter, advised Kellish of its intention to bring tenure charges against her and did so in May 2017. In addition, SHU conducted its own investigation and, in December 2017, concluded there were grounds for dismissal. It suspended Kellish for the balance of her contract term and refused to renew her contract.

After considering oral argument on the summary decision motions, the ALJ concluded in a written opinion that Kellish's unbecoming conduct was "rooted in two related deceptions: (1) her failure to adequately inform [UCC] of the nature of her outside employment as required by her employment contract; and (2) her failure to inform [UCC] of working full time for her outside employment while on disability." In considering whether termination was an appropriate remedy, the ALJ concluded Kellish's claim that she lacked any intent to deceive "strain[ed] credulity," since her deceptive

> conduct [went] beyond a miscommunication or single act because it was an ongoing misrepresentation. Additionally, the amount of time [Kellish] maintained this misrepresentation, and the amount of opportunities she had to disclose the nature of her outside employment, especially while submitting the application for disability, reveal the true nature of the conduct that [Kellish] was intentionally withholding information from UCC because it would jeopardize her tenure rights and employment. She consciously determined to misrepresent the extent of her outside employment by omission. Her omission allowed her to

5

receive full disability benefits while continuing to work full time at [SHU].

The ALJ granted UCC's motion for summary decision and upheld the tenure charges and Kellish's dismissal. The Board adopted the ALJ's decision "in its entirety" and terminated Kellish from her position effective November 5, 2018. This appeal followed.

Before us, Kellish contends she did not engage in unbecoming conduct, and alternatively asserts that summary decision was improper because there were material factual disputes, and the ALJ made multiple factual errors in her decision. Additionally, Kellish argues the Board was required to impose progressive discipline, and, given her lack of prior disciplinary charges, termination was improper.

Our review of the Board's final decision is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). We must uphold the decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27–28). "That deferential standard applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. "[W]hen reviewing administrative sanctions, 'the test . . . is "whether such punishment is so disproportionate to the offense, in

light of all the circumstances, as to be shocking to one's sense of fairness."'" Id. at 28–29 (quoting In re Polk, 90 N.J. 550, 578 (1982)).

Because our review of the record reveals "that the decision . . . [was] supported by sufficient credible evidence on the record as a whole[,]" Rule 2:11-3(e)(1)(D), and the discipline imposed was appropriate given Kellish's unbecoming conduct, we affirm. We add only the following comments addressing appellant's specific contentions.

Although Kellish cross-moved before the ALJ for summary decision and now asks for the same relief on appeal, she alternatively asserts there were factual disputes that required a full hearing and cites to alleged errors in the ALJ's decision for support. We conclude the matter was appropriate for summary decision.

"[A] motion for summary decision . . . will be granted . . . if 'the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law."'" Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of the Bridgewater-Raritan School Dist., 221 N.J. 349, 365 (2015) (quoting Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995) (in turn quoting N.J.A.C. 1:1-12.5(b))). "The initial decision of the ALJ, as well as the final agency action

. . . must ultimately 'determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."'" Id. at 365–66 (quoting Contini, 286 N.J. Super. at 122).

Kellish argues, as she did before the ALJ, that because she was already employed at SHU prior to the 2015 CNA, her earlier notices and her August 2016 notice of outside employment were sufficient, and she need not have awaited the president's approval. This contention distracts from the ALJ's salient, undisputed finding that Kellish never advised the president or her supervisors at UCC of the complete change in the nature and scope of her position at SHU after August 2015, when SHU hired Kellish as its full-time Director of Clinical Education.[1]

Kellish's dispute of the ALJ's finding that her work schedules at UCC and SHU actually conflicted is likewise immaterial. Undisputedly, Kellish held two full-time positions at two different institutions of higher learning, and neither

---

[1] Parenthetically, Kellish suggests UCC violated the terms of the 2015 CNA because the president never responded to her notice with approval or disapproval. This too only distracts from the undisputed fact that Kellish never provided UCC with a truthful statement regarding her outside employment at SHU.

one of the schools knew about her position at the other because she failed to tell them. Also significant are the undisputed facts that Kellish's August 2016 notice to UCC never advised she would be working at SHU during the spring 2017 semester, nor did Kellish ever advise UCC she intended to continue working while collecting disability.

Kellish contends her post-operative condition restricted her ability to lift anything more than two pounds, thereby foreclosing her from performing her clinical duties at UCC, but not her more sedentary duties at SHU. However, even if we were to resolve that disputed fact in Kellish's favor for purposes of summary decision, the undisputed fact is that Kellish's application for temporary disability benefits was supported by statements from her doctor that unequivocally deemed her unable to work at all. Kellish's application for temporary disability benefits clearly states that she was receiving no other source of income, a material misstatement of fact.

As noted, a summary decision is appropriate "in instances where the undisputed material facts, as developed on motion or otherwise, indicate that a particular disposition is required as a matter of law." In re Robros Recycling Corp., 226 N.J. Super. 343, 350 (App. Div. 1988) (emphasis added). Here, the

material facts are undisputed, and summary decision was certainly appropriate regarding Kellish's outside employment before and during her disability leave.

However, we gather that Kellish contends the ALJ could not have summarily decided she acted with fraudulent intent. The tenure charges contained an allegation that Kellish "committed a fraud" upon UCC; the ALJ never specifically used the term "fraud," but she did find Kellish made deceptive material misrepresentations about her position at SHU and her continued work while on disability. See Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (defining elements of fraud as a knowingly false, material misrepresentation made with the intention that another rely upon it, reasonable reliance and resulting damages).

Kellish suggests her fraudulent intent was in dispute, premised in large part upon statements in her certification in support of the cross-motion and in opposition to UCC's motion. See, e.g., State Highway Dep't v. Civil Serv. Comm'n of Dep't of Civil Serv., 35 N.J. 320, 327 (1961) ("The question of intention is always a question of fact depending upon the particular facts and circumstances of a case."). She contends resolving that issue in her favor significantly impacts whether her conduct was unbecoming and warranted dismissal, as opposed to some lesser sanction.

Kellish's own denial of an intent to defraud is not particularly controlling in light of the circumstantial evidence otherwise available. See ibid. ("A given intent may be found even though a party orally den[ies] its existence.") (citing Phelps v. Fuchs & Lang Mfg. Co., 82 N.J.L. 474 (E. & A. 1911)); Wilson v. Amerada Hess Corp., 168 N.J. 236, 254 (2001) (noting "that '[w]hat a person's intentions were need not be proved from what he said, but they may be inferred from all that he did and said, and from all the surrounding circumstances of the situation under investigation'") (alteration in original) (quoting Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 162 (Ch. Div. 1951), aff'd o.b., 9 N.J. 605 (1952)). We agree with UCC that the overwhelming evidence of material misrepresentations fully supports the Board's conclusion that Kellish engaged in conduct unbecoming.

The "Court has defined unbecoming conduct as conduct 'which adversely affects the morale or efficiency of the [department]' or 'has a tendency to destroy public respect for [government] employees and confidence in the operation of [public] services.'" Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 13 (2017) (alterations in original) (quoting In re Young, 202 N.J. 50, 66 (2010)). "[A] finding of unbecoming conduct 'need not "be predicated upon the violation of any particular rule or regulation, but may be based merely upon the violation

11

of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct."'" Id. at 13–14 (quoting Karins v. City of Atl. City, 152 N.J. 532, 555 (1998)).

It suffices to say that administrative agencies have imposed discipline based upon unbecoming conduct involving material misrepresentations made by an employee. See, e.g., In re Johnson-Taylor, 2017 N.J. CSC LEXIS 103 (Feb. 8, 2017) (sustaining termination for conduct unbecoming when employee falsely certified income on loan forms after a substantial increase in salary that made her ineligible); In re Boyer, 2013 N.J. CSC LEXIS 942 (Oct. 2, 2013) (sustaining dismissal where employee made multiple knowing misrepresentations to her supervisors regarding failures to report on time). Collecting medical leave benefits while engaging in outside employment has historically been considered more egregious. See, e.g., In re Winters, CSC 2007-2857, final decision, (Oct. 10, 2008), http://njlaw.rutgers.edu/collections/oal/final/csv3786-07.pdf (adopting termination recommendation because the employee "engaged in outside employment while on sick leave"); Kline v. Dep't of Law & Pub. Safety, 92 N.J.A.R.2d 414 (Div. of State Police 1992) (termination appropriate because the employee's engagement in outside employment while on sick leave was as a severe breach of the public trust); In re La Pierre, CSC 2008-2347, final

decision, (Nov. 7, 2008), http://njlaw.rutgers.edu/collections/oal/final/csv462-08.pdf (upholding termination of employee who engaged in outside employment while collecting disability or sick leave payments); In re Certificate of Schumacher, EDE 7396-03, final decision, (Oct. 13, 2005), http://njlaw.rutgers.edu/collections/oal/final/ede7396-03.pdf (same).

We conclude that the undisputed facts in the motion record lead to the inescapable conclusion that Kellish engaged in conduct unbecoming a public servant by misrepresenting the nature and scope of her full-time employment at SHU, and by continuing that employment after advising UCC she was unable to perform any work during her recuperation and filing for disability benefits.

Lastly, Kellish contends that the Board failed to employ "progressive discipline," and its decision to dismiss her from her tenured professor position was unwarranted. We again disagree.

As already noted, our review of agency discipline is highly deferential. Herrmann, 192 N.J. at 28. And, as the Court has plainly stated, "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." In re Carter, 191 N.J. 474, 484 (2007). Dismissal for her unbecoming conduct under the facts presented

A-1445-18T1

here is a penalty neither disproportionate to the offense, nor shocking to our sense of fair play. <u>Herrmann</u>, 192 N.J. at 28–29.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION